Benjamin Gubernick (SBN 321883)
**GUBERNICK LAW P.L.L.C.**
10720 W. Indian School Rd.,
Suite 19, PMB 12
Phoenix, AZ 85037
623-252-6961
ben@gubernicklaw.com

David N. Lake, State Bar No. 180775
**LAW OFFICES OF DAVID N. LAKE,**
**A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 479-9990
Email: david@lakelawpc.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ANTHONY PAN, an individual;

Plaintiff,

v.

MASTER LOCK COMPANY, LLC., a Delaware corporation;

Defendant.

CASE NO.: 2:22-cv-08943-CAS-AS

**FIRST AMENDED COMPLAINT**

[CLASS ACTION]

1. Violation of California's Unfair Competition Law;
2. Violation of California's Consumers Legal Remedies Act;
3. Violation of California's False Advertising law;
4. Breach of Implied Warranty Under the Song-Beverly Consumer Warranty Act.

(Jury Trial Demanded)

Anthony Pan ("Plaintiff") through undersigned counsel, on behalf of himself and all others similarly situated, brings this First Amended Class Action Complaint against Master Lock Company, LLC ("Defendant" or "Master Lock") and alleges upon personal knowledge as to his own actions, and upon information and belief and counsel's investigation on all other matters, as follows:

## NATURE OF ACTION

1. This case seeks recovery for consumers who overpaid for lock boxes that Master Lock falsely claimed were suitable for safe and secure outside storage of house keys and other items.

2. Master Lock manufactures and sells five models of key lock boxes that are subjects of this lawsuit: the "5420D", the "5422D", the "5423D", the "5424D", and the "5425D" (collectively, the "Products").

3. The Products are metal boxes that attach to either a doorknob or gate using a shackle, or to a wall using screws.

4. The Products are opened by inputting a user-selected combination and then depressing a rectangular lever above the keypad (the "Open Lever"). On the 5422D and 5423D (the "Keypad Models"), the combination is selected using an alphanumeric keypad. On the 5420D, 5424D, and 5425D (the "Code Wheel Models"), the user turns four numeric code wheels.

5. Master Lock advertises the Products to consumers who wish to securely store home entry devices, such as keys or garage door openers, on the outside of their houses. Master Lock expressly markets the Products as a better alternative to hiding keys under a doormat or potted plant.

6. What Master Lock refuses to tell consumers, though, is that the Products have a security vulnerability that allows *any* unauthorized person to decode and gain access to the Products quickly and without tools. By applying continuous pressure to the Open Lever and then testing each button or position on the code wheel, any person can identify which numbers or symbols are part of the combination.

7. On the Keypad Models, the order of the buttons pressed does not matter; thus, all an unauthorized person needs to do to gain access is press the correct buttons and open the lock box. Similarly, on the Code Wheel Models, it makes no difference which order the wheels are turned; if the four correct positions have been selected, the lock box will open.

8. To make matters worse, although the Products' vulnerability to unauthorized access is not common knowledge among consumers, it is known to or easily ascertained by burglars or other people seeking unauthorized access. As a result, the Products fail to provide secure storage, and are unfit for their advertised use.

9. Plaintiff, like all members of the putative class, would not have purchased the Products had he known of the vulnerability or would have only been willing to pay substantially less.

10. Master Lock has violated California consumer protection and warranty laws, and accordingly, Plaintiff seeks an award of damages and appropriate equitable relief.

## PARTIES

11. Plaintiff Anthony Pan is an individual residing in Los Angeles County, California.

12. Defendant Master Lock Company, LLC is a Delaware corporation. Its principal place of business is 6744 S Howell Avenue, Oak Creek, Wisconsin.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction pursuant to the Class Action Fairness Act, 23 U.S.C. § 1332(d), because: (1) there are at least one hundred members of the proposed class; (2) the aggregated claims of the individual Class Members exceed the sum value of $5,000,000 exclusive of interest and costs; and (3) Defendant and more than two-thirds of the proposed class are citizens of different states.

14. Defendant markets and sells the Products to consumers throughout this District, a significant number of Defendant's customers are residents of this District, and the wrongful acts and omissions alleged herein have affected consumers in this District.

Defendant is therefore subject to personal jurisdiction in this District.

15. Venue is proper in this District because Plaintiff resides in the Central District of California and purchased a 5422D lock box in the Central District of California.

**FACTUAL ALLEGATIONS**

16. Key lock boxes have become a ubiquitous sight at the entries of California homes. In theory, they provide a convenient way to lend housekeys to guests without having to meet them in-person. All a homeowner needs to do is secure the key inside the lock box, and text or email the combination to the guest. More generally, they provide a readily accessible place for a homeowner to store a spare house key.

17. Yet key lock boxes have a downside: like the front of a bank vault, they effectively broadcast to anyone who walks by that they contain something valuable, in this instance a house key. Thus, like a bank vault, a lock box is a recognizable target and therefore must be effective at preventing unauthorized access.

18. This case arises because Defendant falsely represents that five of its most popular lockboxes are up to the task. As explained below, the 5420D, 5422D, 5423D, 5424D, and 5425D can be opened easily without knowing the code and without tools by any burglars familiar with their vulnerabilities.

19. The Products are pictured below:







*The 5420D* *The 5422D* *The 5423D*





*The 5424D* *The 5425D*

20. Defendant uses nearly identical advertising for all the Products.

21. Defendant's advertising revolves around the claim that the Products provide secure storage for house keys. To illustrate this point, Master Lock's web pages for the Products each use a picture promising "Secure Storage for Keys, Key Fobs, & Access Cards", along with the claim that the Products are a better option for homeowners than hiding keys near the door:












22. The above images are also used in the Products' online listings on websites including Amazon.com.

23. Online listings, as well as Master Lock's website, are littered with other claims that the Products provide secure storage for keys. For example, Defendant has posted a promotional video for the Products on its website and YouTube that promises that

the Products will securely store keys and are "perfect for protecting your family."[1]

24. These claims are repeated on the clamshell packaging for the Products, which highlight the Products' supposed resistance to attacks by burglars and promise ideal access control for primary residences.

25. To operate the Keypad Models, the user first depresses the Open Lever above the alphanumeric keypad. This will open the lockbox because the Keypad Models ship from the factory with no set combination.

26. Next, the user can select which of the alphanumeric buttons to include in the personalized combination. This is done by setting arrows on the back of each button to either the "off" or "on" position using an included tool. The lock box must be open to access the arrows. So, for example, a user wishing to have a combination of 1567 would set the 1, 5, 6, and 7 arrows to the "on" position, and leave the rest of the arrows in the "off" position.

27. Once the user combination is selected and the lock box is closed, the Open Lever will only open the lock box if 1, 5, 6, and 7 are pressed first, and no other buttons have been pressed.

28. The "C" button (standing for "clear") below the alphanumeric pad releases all the buttons, allowing an operator to start over if an incorrect combination was entered.

29. Defendant has posted an instructional video on YouTube demonstrating the operation of the Keypad Models.[2]

30. The Code Wheel Models are operated in a similar manner. The user first enters the factory default code on the four wheels ("0000") and presses the Open Lever to open the box. Next, the user holds an internal code reset lever down while turning the wheels to the user's desired numbers. Finally, the user closes the box. From that point on,

---

[1] Master Lock, *Master Lock Spare Key Lock Boxes*, YouTube, Aug. 19, 2014 available at https://www.youtube.com/watch?v=Vx4bhn-aaQU.

[2] Master Lock, *5422D/5423 Lock Boxes*, YouTube, Apr. 21, 2015 available at https://www.youtube.com/watch?v=HhcSrKVRST0&t=145s.

the Open Lever will only open the lock box if the user-selected numbers have been selected on the code wheels.

31. The process for operating the Code Wheel Models explained in more detail in the written instruction manual posted on Master Lock's website.[3]

32. Defendant fails to mention in its instructional videos, manuals, or any of its advertising that the Products provide essentially no defense against burglars. Indeed, the Products do more harm than good, because they can be easily decoded and broadcast to intruders that a house key can be found within—homeowners would be better off using one of the free options Defendant claims are inferior, i.e., hiding a key under a doormat or flowerpot.

33. The problems start with the Products' combination feature. The word "combination" implies "an ordered sequence … such as … a sequence of letters or numbers chosen in setting a lock[.]"[4] But, with the Products, the order that the buttons are pressed or the code wheels are turned is irrelevant. If a person knows which buttons/wheel positions are included in the combination, they can be inputted in any order. For the Keypad Models, if the owner-selected "combination" is 1567, the lock box will still open if 7651 in inputted instead. Thus, a person seeking unauthorized access to the lock box need only figure out which of the buttons have been set to the "on" position. Similarly, for the Code Wheel Models, the order that the four wheels are turned is irrelevant. All that matters is that each wheel has been turned to the correct position.

34. And unfortunately, Master Lock has designed the Products in such a way that anyone can, with minimal skill and effort, decode the Products.

35. To decode the Keypad Models, a person first presses the buttons they wish to test. Next, firm continuous pressure is applied to the Open Lever. The buttons that are part

[3] Master Lock, *5420D Universal Lock Box Instruction Sheet* available at https://cdn.masterlock.com/masterlock/resources/documents/pdfs/5420D-Instruction-Sheet.pdf (last accessed Feb. 24, 2022).

[4] Merriam-Webster Dictionary, *Combination*, available at https://www.merriam-webster.com/dictionary/combination (accessed on November 7, 2022).

of the combination will travel substantially more freely than the ones in the "off" position.

36. On January 24, 2020, YouTube content creator LockPickingLawyer posted a video demonstrating this exploit.[5] Since its posting, the video has amassed more than 1 million views. Other YouTube content creators have also posted videos demonstrating the vulnerability.[6]

37. The decoding process is essentially the same for the Code Wheel Models. While applying continuous, firm pressure to the Open Lever, the user need only turn each wheel until they find a position where the wheel travels relatively freely.

38. On June 19, 2019, YouTube content creator BosnianBill posted a video demonstrating the exploit for the Code Wheel Models.[7] This video has been viewed over 60,000 times. On September 30, 2019, LockPickingLawyer posted a video on YouTube demonstrating the same exploit.[8] That video has been viewed over 360,000 times.

39. The Products are susceptible to these because there is a direct connection between the Open Lever and the combination plate (on the Keypad Models) or the code wheels (on the Code Wheel Models). Thus, applying firm pressure to the Open Lever binds all keys on the keypad/positions on the code wheels that are not part of the combination.

40. The Products' vulnerability to the exploit described above is inherent in their design.

41. Master Lock was, at all relevant times, aware of the exploits shown in the

---

[5] LockPickingLawyer, *[1032] No Tools Needed: Master Lock Push Button Key Box Decoded*, YouTube, Jan. 24, 2020 available at https://www.youtube.com/watch?v=6RSXQsYYso4.

[6] Uncensored Tactical, *Master5423D*, YouTube, June 5, 2018 available at https://www.youtube.com/watch?v=R1h41NJT-zI (97,000 views); HakAtlt, *How to pick push button master lock realtor lockbox*, YouTube, Apr. 7, 2016 available at https://www.youtube.com/watch?v=TqROxNPUVMQ (151,000 views).

[7] BosnianBill, *(1516) Airbnb Test Lock #4 (Master 5425D)*, YouTube, June 19, 2019, available at https://www.youtube.com/watch?v=jEz5-MdIzVQ.

[8] LockPickingLaywer, *[966] Decoded Without Tools: Master Lock "Safe Space" Key Box*, YouTube, Sept. 30, 2019 available at https://www.youtube.com/watch?v=EyFop7vyAjc.

LockPickingLawyer and BosnianBill videos.

42. Despite its knowledge of the Products' vulnerability to unauthorized access, Master Lock has continued, at all relevant times, to hold them out to California consumers as a secure outside storage option for house keys.

43. Master Lock chooses to intentionally conceal or omit the existence of the Products' vulnerability to unauthorized access from its advertising and packaging.

44. Consumers cannot be expected to discover the Products' vulnerability to unauthorized access prior to purchase.

45. Were consumers aware of the Products' vulnerability to unauthorized access, they would either not purchase the Products at all, or would only be willing to pay significantly less for them.

46. The Products' vulnerability to unauthorized access also poses a safety hazard, and makes the Products unfit for their ordinary use.

47. Criminals are known to target homes with the Products. For example, several years ago ABC's Detroit affiliate ran a story about burglars stealing house keys from Master Lock's lock boxes and then burglarizing the homes.[9] Several images from the report are depicted below:




[9] WXYZ-TV Detroit Channel 7, *Thieves targeting lock boxes to break into homes*, *YouTube*, Oct. 1, 2018 available at https://www.youtube.com/watch?v=nXmswugQPug.




48. On August 5, 2021, Plaintiff purchased a Master Lock 5422D lock box on Amazon.com to store a spare house key on the outside of his home. Plaintiff paid $30.32 for the item.

49. Plaintiff purchased the 5422D because he believed, based on Defendant's representations, that it provided a secure outside storage option for house keys.

50. Prior to making his purchase, Plaintiff saw the image of the 5422D included in Paragraph 21 of this First Amended Complaint. He believed and relied on its claim that the 5422D provided "Secure Storage for Keys", and believed the picture's claim that the 5422D was a better option than, for example, hiding a key under a doormat. He also read the product description on the page's listing, and relied on its claims that the 5422D was a secure storage option for house keys.

51. At the time of purchase, Plaintiff was unaware of the exploit demonstrated in the LockPickingLawyer and BosnianBill YouTube videos.

52. Had Plaintiff been aware of the exploit, he would not have purchased the 5422D or would only have been willing to pay substantially less for it.

53. Plaintiff and all Class members did not receive the benefit of the bargain.

## CLASS ALLEGATIONS

54. Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following class of persons:

**The Class**: All persons in California who, during the Class Period, purchased a 5420D, 5422D, 5423D, 5424D, or 5425D Master Lock lock box.

The Class Period starts at the earliest date allowed under the applicable statute of limitations and continues to the date of judgment.

55. Specifically excluded from the Class are: (a) any officers, directors or employees of Defendant; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

56. Plaintiff reserves the right to amend or modify the class definition with greater specificity, by further division into subclasses, or by limitation to particular issues.

57. **Numerosity**. Class members are so numerous that joinder of each individual class member would be impracticable and unfeasible, and the disposition of their claims as a class will benefit the parties, the Court, and the interests of justice.

58. **Ascertainability**. The proposed Class is ascertainable from objective criteria.

59. **Commonality and Predominance**. There is a well-defined community of interest among the Class's members and common questions of *both* law and fact predominate over questions affecting individual members. These common legal and factual questions include, but are not limited to, whether: (1) Master Lock's representation that the Products are a secure outside storage option for house keys is materially misleading; (2) whether Master Lock had a duty to disclose the Products' vulnerability to unauthorized access; and (3) whether the Products are fit for the ordinary purpose for which they are used.

60. **Typicality**. Plaintiff's claims are typical of those of all Class members in that

they arise out of the same course of conduct by Defendant, and enable him to seek the same relief under the same theories of recovery. The effort Plaintiff undertakes to pursue his claims will significantly benefit Class members because of the identical nature of the issues across the Class.

61. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff shares a common interest with Class members. Plaintiff has suffered an injury-in-fact because of Defendant's conduct. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex class action litigation. Plaintiff and his counsel will prosecute this action vigorously and faithfully for the benefit of the Class. Plaintiff has no interests contrary to the Class, and will fairly and adequately protect the interests of the Class.

62. **Community of Interest.** The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated. These common questions of law and fact predominate. The named Plaintiff's claims are typical of the Class's members.

63. **Superiority**. The certification of the Class in this action is superior to the litigation of a multitude of cases by members of the putative Class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are members of the Class who are unlikely to join or bring an action due to, among other reasons, their reluctance to spend substantial time and money to recover a relatively modest sum. Equity dictates that all persons who stand to benefit from the relief sought should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among Class members in relation to the benefits received. The potential recovery for each individual member of the Class is modest relative to the substantial burden and expense of individual prosecution. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court.

64. In the alternative, the above-referenced Class may be certified because:

(a) The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish incompatible standards of conduct for Defendant;

(b) The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the Class who are not parties to the adjudications, or which would substantially impair or impede the ability of other members to protect their interests; and,

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class.

**FIRST CAUSE OF ACTION**

**Violation of the Unfair Competition Law ("UCL")**

**(Cal. Bus. & Prof. Code §§ 17200, et seq.)**

**(Class Claim)**

65. Plaintiff incorporates by reference all preceding and succeeding allegations.

66. Defendant has violated and continues to violate California's UCL (Cal. Bus. & Prof. Code § 17200, *et seq*.), which prohibits unlawful, unfair, and fraudulent business acts or practices.

67. Defendant's acts and practices constitute unlawful, unfair, and fraudulent business practices, in violation of the UCL. Defendant has sold, and continues to advertise and sell, the Products even though the Products can be easily and quickly decoded without tools. Defendant further affirmatively represented that the Products offered secure outside storage for house keys. Moreover, Defendant failed to disclose to consumers that the Products were vulnerable to unauthorized access.

68. Defendant's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act and False Advertising Law, for the reasons set forth below.

69. Defendant's acts also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, Defendant knowingly concealed, continues to conceal, and continues to fail to disclose at the point of sale and otherwise that the Products are not suitable for securing house keys. To the contrary, Defendant affirmatively represents that the Products are suited for the secure outside storage of house keys. But for Defendant's fraudulent omissions and affirmative misrepresentations, Plaintiff and Class members would not have purchased the Products or would have only been willing to pay significantly less for them.

70. Defendant's conduct also constitutes unfair business practices for at least the following reasons:

a. The gravity of potential harm to consumers resulting from Defendant's conduct far outweighs any legitimate utility;

b. Defendant's conduct is immoral, unethical, unscrupulous, or substantially injurious to consumers; and

c. By falsely representing that the Products are suitable for outside storage of house keys, Defendant gains an unfair advantage over competitors whose products either do not suffer from equivalent vulnerabilities, or who are honest with customers about the security limitations of their products.

71. As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class suffered a foreseeable injury-in-fact, in that they lost money. Plaintiff either would not have purchased the Products or would have only been willing to pay significantly less.

72. Plaintiffs and Class members are entitled to equitable relief, including an order requiring Defendant to pay restitution to Plaintiff and the Class of amounts obtained

as a result of its unfair, deceptive, and fraudulent practice.

**SECOND CAUSE OF ACTION**

**Violation of the Consumers Legal Remedies Act ("CLRA")**

**(Cal. Civ. Code § 1750, *et seq*.)**

**(Class Claim)**

73. Plaintiff incorporates by reference all preceding and succeeding allegations.

74. Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and has provided "goods" within the meaning of Cal. Civ. Code §§ 1761(a) and 1770.

75. Plaintiff and members of the Class are "consumer[s]" within the meaning of Cal. Civ. Code §§ 1761(d) and 1770 and have engaged in "transaction[s]" within the meaning of Cal. Civ. Code §§ 1761 and 1770.

76. Defendant's acts and practices violated the CLRA for at least the following reasons:

a. Defendant represented that the Products had characteristics, uses, qualities, or benefits which they did not have;

b. Defendant advertises the Products with intent not to sell them as advertised;

c. Defendant represents that the Products are of a particular standard, quality, or grade when they are not.

77. On September 20, 2022, Defendant received a letter that complied with Section 1782(d) of the CLRA, which was prepared by Plaintiff's counsel on behalf of Plaintiff and the Class. The letter gave Defendant notice of the allegations in this First Amended Complaint. Defendant failed to remedy the issues that gave rise to this Complaint, or even respond to the letter. As a result, Plaintiff requests monetary damages, restitution, and all other applicable relief available under the CLRA.

78. A CLRA affidavit signed by Plaintiff Anthony Pan is attached as Exhibit A.

**THIRD CAUSE OF ACTION**

**Violation of the False Advertising Law ("FAL")**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

**(Class Claim)**

79. Plaintiff incorporates by reference all preceding and succeeding allegations.

80. The FAL, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits unfair, deceptive, untrue or misleading advertising.

81. Defendant violated the FAL when it deceptively advertised and marketed the Products as a secure storage option for the outdoor storage of house keys. Defendant's representations were false because the Products do not conform to them.

82. In making and disseminating the representations alleged in this Complaint, Defendant knew or should have known that the representations were untrue or misleading.

83. Defendant's misrepresentations were specifically designed to induce reasonable consumers, like Plaintiff and Class members, to purchase the Products.

84. As a foreseeable and proximate result of Defendant's deceptive advertising, Plaintiff and Class members were duped into purchasing or overpaying for the Products.

85. Plaintiff and Class members are entitled to all damages available under the FAL, including punitive damages, as well as reasonable attorney's fees and costs of suit.

**FOURTH CAUSE OF ACTION**

**Breach of Implied Warranty of Merchantability Under the Song-Beverly Consumer Warranty Act**

**(Class Claim)**

86. Plaintiff incorporates by reference all preceding and succeeding allegations.

87. The Products are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

88. Defendant is a manufacturer within the meaning of Cal. Civ. Code § 1791(j).

89. Plaintiff and class members who purchased the Products within the State of California are "buyer[s]" within the meaning of Cal. Civ. Code § 1791(b).

90. Defendant impliedly warranted to Plaintiff and class members that the Products were "merchantable" within the meaning of Cal. Civ. Code § 1792.

91. Contrary to Defendant's warranties, the Products are unfit for the ordinary purpose for which such goods are used, i.e. outside storage of house keys.

92. Contrary to Defendants' representations, the Products are not secure. Indeed, the Products' security vulnerabilities make them a safety hazard for California consumers.

93. The defects in the Products are latent and were present at the time of sale. Therefore, the Products were not merchantable at the time of sale.

94. On September 20, 2022, Defendant received written notice from Plaintiff's counsel of its breach of breach of implied warranty. Defendant did not respond to the September 20, 2022, notice.

95. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and class members have been damaged in an amount to be proven at trial and are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, pursuant to Cal. Civ. Code §1794.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly aggrieved persons, pray for judgment against Defendant as follows:

1. For an order certifying this matter as a class action and appointing Plaintiff and his undersigned counsel to represent the Class in this litigation;
2. A judgment requiring Defendant to pay statutory and compensatory damages and interest as required by law, as well as reasonable attorneys' fees and costs of suit;
3. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

Date: March 10, 2023

By:________________________

Benjamin Gubernick (SBN 321883)
**GUBERNICK LAW P.L.L.C.**
10720 W. Indian School Rd.,
Suite 19, PMB 12
Phoenix, AZ 85037
623-252-6961
ben@gubernicklaw.com

David N. Lake, Esq.
**LAW OFFICES OF DAVID N. LAKE, A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Email: david@lakelawpc.com

**CERTIFICATE OF SERVICE**

I certify that the foregoing was served upon all parties' attorneys of record through the Court's electronic filing system on March 10, 2023.

By:________________

Benjamin Gubernick