JAIKARAN SINGH, CA Bar No. 201355
    jsingh@foley.com
KELSEY FINN, CA Bar No. 334670
    kfinn@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE:  213.972.4500
FACSIMILE:   213.486.0065

Attorneys for Defendant Master Lock
Company LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY PAN, an individual;<br><br>                                  Plaintiff,<br><br>             vs.<br><br>MASTER LOCK COMPANY, LLC., a Delaware corporation;<br><br>                                  Defendant. | Case No. 2:22-cv-08943-JLS-AS<br><br>**DEFENDANT MASTER LOCK COMPANY LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[CLASS ACTION]<br><br>Date:        May 12, 2023<br>Time:       10:30 a.m.<br>Ctrm:      8A, 8th Floor<br>Judge:     Hon. Josephine L. Staton<br><br>Complaint filed:  December 9, 2022<br>FAC filed: March 10, 2023 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................... 1

II.   PLAINTIFF'S ALLEGATIONS .............................................................. 2

    A.   THE MASTER LOCK BRAND LOCK BOX PRODUCTS. ..................... 2

    B.   PLAINTIFF'S EXPERIENCE AND CONTENTIONS. ............................ 3

III.   LEGAL STANDARDS .......................................................................... 5

IV.   PLAINTIFF LACKS ARTICLE III STANDING TO PURSUE HIS
    CLAIMS .................................................................................................. 6

    A.   PLAINTIFF'S ALLEGATIONS OF ALLEGED ECONOMIC
        INJURY FAIL TO SUBSTANTIATE THAT HE OVERPAID FOR
        THE LOCK BOX PRODUCT OR DID NOT RECEIVE THE
        BENEFIT OF THE BARGAIN. ..................................................... 8

    B.   PLAINTIFF MUST ALLEGE "SOMETHING MORE" THAN
        MERE CONCLUSORY ALLEGATIONS OF OVERPAYMENT OR
        NOT RECEIVING THE BENEFIT OF WHAT HE ACTUALLY
        BARGAINED FOR ...................................................................... 10

V.   CONCLUSION ...................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arizona v. Yellen,*
    34 F.4th 841 (9th Cir. 2022) ....................................................................8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................5, 6

*Bates v. United Parcel Serv., Inc.,*
    511 F.3d 974 (9th Cir. 2007) ...................................................................6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................5

*Birdsong v. Apple, Inc.,*
    590 F.3d 955 (9th Cir. 2009) ...................................................................9

*Boysen v. Walgreen Co.,*
    No. 11–cv–06262–SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ..........12

*Cahen v. Toyota Motor Corp.,*
    147 F. Supp. 3d 955 (N.D. Cal. 2015)......................................2, 10, 11, 13

*Cahen v. Toyota Motor Corp.,*
    717 F. App'x 720 (9th Cir. 2017) ......................................................7, 12

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)..........................................................................7, 9, 10

*Davidson v. Kimberly-Clark Corp.,*
    889 F.3d 956 (9th Cir. 2018) ...................................................................7

*Ellis v. J.P. Morgan Chase & Co.,*
    950 F. Supp. 2d 1062 (N.D. Cal. 2013)...................................................6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.,*
    528 U.S. 167 (2000)..................................................................................7

*Hinojos v. Kohl's Corp.,*
    718 F.3d 1098 (9th Cir. 2013) .................................................................8

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) .................................................................6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................6, 7

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ................................................................8, 13

*McGee v. S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) .........................................................................8

*Papasan v. Dometic Corp.*,
    No. 16-cv-02117-HSG, 2017 WL 4865602 (N.D. Cal. Oct. 27, 2017) .................10, 12

*Pirozzi v. Apple Inc.*,
    913 F. Supp. 2d 840 (N.D. Cal. 2012)..........................................................10

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .......................................................................6

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).......................................................................................8

*U.S. Hotel & Resort Mgmt., Inc. v. Onity Inc.*,
    No. 13-1499, 2014 WL 3748639 (D. Minn. July 30, 2014) (dismissing .................9, 10

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .......................................................................6

*Watkins v. MGA Entertainment, Inc.*,
    550 F. Supp. 3d 815 (N.D. Cal. 2021) ..........................................................6

**Federal Statutes**

U.S. Const. Art. III..................................................................................9, 10, 11

U.S. Const. Art. III, § 2, cl. 1 ..............................................................................7

**State Statutes**

Bus. & Prof. Code §§ 17200 .................................................................................5

Bus. & Prof. Code §§ 17500 .................................................................................5

Cal. Civ. Code § 1750 ...........................................................................................5

**Federal Rules**

Fed. R. Civ. P. 8 ...........................................................................................5

Fed. R. Civ. P. 9(b) ......................................................................................6

Fed. R. Civ. P. 12(b)(1) ................................................................................6

Fed. R. Civ. P. 12(b)(6) ................................................................................5

## I. **INTRODUCTION**

When a plaintiff's claimed economic injury rests on theories of overpayment or not receiving the benefit of bargain, it is well-settled that he must allege more than just a hypothetical risk of future harm to demonstrate injury-in-fact to confer Article III standing.  Defendant Master Lock Company LLC ("Defendant") manufactures and markets a line of portable lock boxes used for outdoor storage of keys, key fobs, and access cards.  Plaintiff Anthony Pan ("Plaintiff") filed this proposed class action on behalf of himself and a putative class consisting of others in California, who purchased any of five different models of metal lock box products that function either through a push-button keypad or code wheel combination feature.

Based on three YouTube videos that purportedly demonstrate that an unauthorized user can open a lock box by entering a user's personal push-button or code wheel combination in any order, Plaintiff alleges that Defendant misrepresented that the Products provide "secure storage" for keys and that Defendant failed to disclose the Products' alleged "vulnerability to unauthorized access."  Plaintiff, however, does not allege that *his* lock box does not work correctly or that he tested the lock box to determine whether it had the alleged defect or if he could replicate exploiting the vulnerability purportedly demonstrated in the YouTube videos.  Nor does Plaintiff allege that his lock box was ever exploited by an unauthorized third party, much less that his home was burglarized because a criminal gained access into his lock box and stole his house key.  In short, Plaintiff does not sufficiently allege that he has experienced any negative consequence or legally cognizable injury as a result of his purchase.

As such, Plaintiff's allegations that he "would not have purchased the Products" or "paid substantially less" had he known of the purported vulnerability is based on pure speculation about the risk of future harm based on an alleged product defect.  Plaintiff's First Amended Complaint, however, lacks the "something more," by way of actual injury that the Ninth Circuit has determined to be essential in false advertising cases to establish Article III standing to complain about a product defect that never manifested or where the

injury-in-fact theory rests only on an unproven risk of future harm.  *See Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 970 (N.D. Cal. 2015), *aff'd*, 717 F. App'x 720 (9th Cir. 2017) ("Where economic loss is predicated solely on how a product functions . . . something more is required than simply alleging an overpayment for a 'defective' product.").

The deficiencies in Plaintiff's Complaint are significant and cannot be cured through creative pleading.  Accordingly, for all these reasons and others detailed below, Defendant's motion to dismiss should be granted in its entirety because Plaintiff fails to allege facts plausibly establishing that he has Article III standing.

## II.  PLAINTIFF'S ALLEGATIONS

### A.  The Master Lock Brand Lock Box Products.

Plaintiff alleges Defendant manufactures and sells five models of metal lock box products, which the First Amended Complaint ("FAC") defines collectively as "the Products."  (FAC, ¶ 2 [Dkt. 20].)  The Products can be attached to either a doorknob or gate using a shackle, or can be mounted to a wall using screws.  (FAC, ¶ 3.)  Plaintiff further alleges that the Products are opened by inputting a user-selected combination and then depressing a rectangular lever above the keypad. (*Id.* at ¶¶ 4, 25, 30.)  On the model 5422D and 5423D lock boxes, the combination is selected using an alphanumeric keypad. (*Id.* at ¶¶ 4, 25.)  On the 5420D, 5424D, and 5425D the user turns four numeric code wheels to select the combination.  (*Id.* at ¶¶ 4, 30.)

Plaintiff alleges that the Products ship with no set combination.  (*Id.* at ¶ 25.)  To operate the models with a keypad, the user selects which of the alphanumeric buttons to include in their personalized four-digit combination "by setting arrows on the back of each button to either the 'off' or 'on' position using an included tool."  (*Id.* at ¶ 26.)  Plaintiff alleges that "[o]nce the user combination is selected, the lockbox is closed."  The lock box thereafter will only open if the correct buttons are pressed.  (*Id.* at ¶ 27.)  If an incorrect button is selected while inputting the combination, the user presses the "C" button to clear the device and start over.  (*Id.* at ¶ 28.)

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
-2-
Case No. 2:22-cv-08943-JLS-AS

To operate the models with a code wheel, the user opens the box and selects a four-digit combination using four wheels by holding "an internal code reset lever down while turning the wheels to the user's desired numbers." (*Id.* at ¶ 30.) Then the user closes the box and "[f]rom that point on, the Open Lever will only open the lock box if the user-selected numbers have been selected on the code wheels." (*Id.*) Defendant has posted an instructional video on YouTube demonstrating the operation of the keypad models and an instruction manual on Master Lock's website regarding operating the code wheel models. (*Id.* at ¶¶ 29, 31.)

**B. Plaintiff's Experience and Contentions.**

Plaintiff alleges that on August 5, 2021, he purchased the 5422D lock box product on the Amazon.com website for $30.32 for the purpose of storing a spare house key outside his home. (*Id.* at ¶ 38.) Plaintiff further alleges that before making his purchase, he saw an image of the model 5422D keypad lock box (second image in FAC, ¶ 21, p. 5) on the Amazon listing webpage, which states "Secure Storage for Keys, Key Fobs, & Access Cards." (*Id.* at ¶¶ 21, 50.) He alleges that "[h]e believed and relied on its claim that the 5422D provided 'Secure Storage for Keys', and believed the picture's claim that the 5422D was a better option than, for example, hiding a key under a doormat." (*Id.*) Plaintiff also alleges that he "read the product description on the [web]page's listing, and relied on its claims that the 5422D was a secure storage option for house keys." (*Id.*)

Plaintiff takes issue with the fact that Defendant fails to mention in its instructional videos, manuals, or any of its advertising that "the Products provide essentially no defense against burglars." (*Id.* at ¶ 32.) According to Plaintiff, the Products "have a security vulnerability," "inherent in their design," which "allows any unauthorized person to decode and gain access to the Products quickly and without tools." (*Id.* at ¶¶ 6, 40.) Plaintiff explains that "[b]y applying continuous pressure to the Open Lever and then testing each button or position on the code wheel, any person can identify which numbers or symbols are part of the combination." (*Id.* at ¶ 6.) Plaintiff contends that a person seeking unauthorized access to the lock box need only figure out which of the buttons

have been set to the "on" position for keypad models and turn the wheels to the correct position for the code wheel models. (*Id.* at ¶ 33.) Given this alleged "defect," Plaintiff believes that "the Products can be easily and quickly decoded without tools." (*Id.* at ¶¶ 67, 32, 93.)

Plaintiff advises that "several years ago ABC's Detroit affiliate ran a story about burglars stealing house keys from Master Lock's lock boxes and then burglarizing the homes." (*Id.* at ¶ 47.) Plaintiff also references three YouTube videos posted to demonstrate the Products' alleged "vulnerability" of being susceptible to hacking. (*Id.* at ¶¶ 36, 38.) Plaintiff alleges that on January 24, 2020, content creator "LockPickingLawyer" posted a video "demonstrating the exploit" with a keypad model lock box, which "has amassed more than 1 million views." (*Id.* at ¶ 36.) The year before, on June 19, 2019, content creator "BosnianBill" posted a video demonstrating the exploit in the code wheel models, which had been viewed over 60,000 times, and, to not be outdone, later that year, on September 30, 2019, "LockPickingLawyer" posted a video demonstrating the same exploit, and got over 360,000 views. (*Id.* at ¶ 38.)

Despite all of these alleged views of publicly available information, Plaintiff explains that "[a]t the time of purchase, [he, however,] . . . was unaware of the exploit demonstrated in the LockPickingLawyer and BosnianBill YouTube videos." (*Id.* at ¶ 51.) Plaintiff conveniently points out, however, that "although the Products' vulnerability to unauthorized access is not common knowledge among consumers, it is known to or easily ascertained by burglars or other people seeking unauthorized access." (*Id.* at ¶ 8.)

Plaintiff explains that "[t]his case arises because Defendant falsely represents that five of its most popular lockboxes are up to the task." (*Id.* at ¶ 18.) He contends that the Products "can be opened easily without knowing the code and without tools by any burglars familiar with their vulnerabilities." (*Id.*) Yet, Plaintiff does not allege that his 5422D model lock box was ever compromised or opened by an unauthorized party who exploited the alleged "vulnerability," much less that his home was burglarized by someone who gained access to his lock box. (*See generally* FAC.) More basically,

Plaintiff does not allege that he has verified that his own lock box has the alleged "defect" or that he even tested his lock box for the alleged "vulnerability." (*Id.*) Nevertheless, Plaintiff alleges that "[h]ad [he] been aware of the exploit, he would not have purchased the 5422D or would only have been willing to pay substantially less for it." (*Id.* at ¶ 52.)  He contends that neither he nor the other class members received "the benefit of the bargain." (*Id.* at ¶ 53.)

Although Plaintiff cannot allege that his lock box was "exploited" based on the alleged "defect" or "vulnerability," and has not alleged any *facts* plausibly demonstrating that his lock box even had the alleged "defect" or "vulnerability," he seeks to represent a California class and asserts four state law claims based on the ground that at some unknown point in the future, third parties may commit criminal acts involving his lock box and the lock boxes of other consumers: (1) violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, et seq.; (2) violation of Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (3) violation of False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, et seq.; and (4) breach of implied warranty of merchantability.  (*Id.* at ¶¶ 65-95.)  Plaintiff seeks injunctive and monetary relief on behalf of a putative statewide class of "[a]ll persons in California who, during the Class Period, purchased a 5420D, 5422D, 5423D, 5424D, or 5425D Master Lock lock box." (*Id.* at ¶ 54.)

## III.  <u>LEGAL STANDARDS</u>

The court must dismiss a claim if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 8, 12(b)(6).  Rule 8 demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  The complaint must state sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility only if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.  Allegations that

are merely consistent with liability do not suffice.  *Id.*

The court does not accept as true "legal conclusions," "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]"  *Id.*  A "naked assertion" devoid of "further factual enhancement" does not suffice.  *Id.* (citation omitted). Determining whether allegations amount to a "plausible" claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 669.

Claims sounding in fraud must also meet Rule 9(b)'s particularity requirements. Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1123 (9th Cir. 2009); *Watkins v. MGA Entertainment, Inc.*, 550 F. Supp. 3d 815, 833 (N.D. Cal. 2021).  Rule 9(b) requires not only that Plaintiff identify with particularity the advertising on which he supposedly relied ("the who, what, when, where and how of the misconduct charged[,]" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)), but that she "allege specific facts showing that [he] relied on the alleged misrepresentations or omissions." *Watkins*, 550 F. Supp. 3d at 833.

Further, Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(1), a federal court is to first determine its jurisdiction over the dispute.  *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1071 (N.D. Cal. 2013).  A court sustains a facial attack on subject matter jurisdiction if "the allegations contained in the complaint [or on matters which the court can take judicial notice of] are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

## IV.    PLAINTIFF LACKS ARTICLE III STANDING TO PURSUE HIS CLAIMS

Article III limits the jurisdiction of federal courts to "cases" and "controversies," which is delineated by the doctrine of standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  In this case, Plaintiff has failed to plead facts sufficient to establish that he suffered a cognizable "injury in fact" that satisfies "the irreducible constitutional

minimum of standing" under Article III.  *Id.*; *see also* U.S. Const. art. III, § 2, cl. 1.

To meet his burden of establishing standing, Plaintiff must allege more than a "highly attenuated chain of possibilities"; instead, as the Supreme Court has explained, he must demonstrate three elements.  First, a plaintiff must have suffered an "injury in fact" which is "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Id.* (citations omitted).  Second, the injury must be "fairly traceable to the challenged action of the defendant . . . ." *Id.* (citations and alterations omitted).  Finally, it must be "likely" that the "injury will be redressed by a favorable decision." *Id.* (citations omitted).  "When 'a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element.'" *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 722 (9th Cir. 2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000)).

Further, the "threatened injury must be certainly impending to constitute injury in fact, and . . . allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citations omitted).  "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of the Earth, Inc.*, 528 U.S. at 185).

In this case, Plaintiff does not (and cannot) meet these requirements because he alleges a "highly attenuated chain of possibilities" that would occur only (if at all) as a result of third party intentional criminal conduct directed at him and others by exploiting the alleged "vulnerability," assuming, of course, a defect exists with a lock box (which he has not plausibly alleged with facts for his lock box), to then gain illegal access to his and others homes.

/ / /

/ / /

/ / /

### A.   Plaintiff's Allegations of Alleged Economic Injury Fail to Substantiate that He Overpaid for The Lock Box Product or Did Not Receive the Benefit of the Bargain.

A concrete injury-in-fact "is one that 'actually exist[s],' meaning that it is 'real, and not abstract.'" *Arizona v. Yellen*, 34 F.4th 841, 848 (9th Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)).  In this case, Plaintiff seeks to invoke two theories of Article III standing based on economic injury that have been recognized by the Ninth Circuit: (1) the "benefit-of-the-bargain" theory and (2) the "overpayment" theory.  (*See* FAC, ¶¶ 1, 52-53.)  *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705–07 (9th Cir. 2020); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013).

Plaintiff's reliance on these two theories of standing fails because he does not sufficiently allege facts showing that he actually did not get the value that he paid for or did not receive the benefit for which he actually bargained.  *See, e.g.*, *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (finding standing where defendants' allegedly deceptive scheme for selling homes resulted in foreclosures in plaintiffs' neighborhoods and declines in the value of their homes); *McGee*, 982 F.3d at 705–06.  In particular, Plaintiff does not plausibly allege ***facts*** that demonstrate that his lock box contains the purported "vulnerability" (i.e., that it has the alleged defect that allows for easy unauthorized access by third parties), much less that it was actually exploited by an unauthorized user.

Plaintiff likewise does not allege that he ever tested the lock box for the alleged vulnerability or that his lock box failed to operate as intended.  Nor does Plaintiff allege that he incurred costs having his lock box repaired or even suffered emotionally given that there are no facts to suggest he even attempted to use or actually personally used the product at all.  Instead, Plaintiff alleges that he purchased the 5422D model lock box to store his house key, that the Products' have a design defect and then he references a Detroit television news article and three YouTube videos that purportedly "demonstrate" the alleged "exploit" to suggest that all of Defendant's lock boxes across all five models

could be accessed by unauthorized users.  Such allegations, without more, pled to suggest Plaintiff's ***own*** lock box had the vulnerability created by the alleged defect and could therefore be easily exploited is far-fetched and legally insufficient.

At most, Plaintiff's FAC suggests that he has suffered an economic injury based on a hypothetical risk of injury that a lock box could be accessed by an unauthorized party in the future (due to the alleged vulnerability), which he contends makes the lock box worth less than what he paid for it.  However, it is well settled that a plaintiff cannot establish injury-in-fact, economic or otherwise, based on an entirely hypothetical risk that a possible injury may occur at some point in the future.  *Clapper*, 568 U.S. at 410 (reasoning that a "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending"); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (holding that "the alleged loss in value does not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk of hearing loss to other consumers who may or may not choose to use their iPods in a risky manner"); *accord U.S. Hotel & Resort Mgmt., Inc. v. Onity Inc.*, No. 13-1499, 2014 WL 3748639 (D. Minn. July 30, 2014) (dismissing plaintiffs' claims with prejudice where plaintiffs alleged defendant's hotel locks were susceptible to being hacked but were not actually hacked).

*Onity* is instructive here.  There, a group of hotel owners and operators alleged, like here, that defendant's electronic key card-operated hotel locks were defective because they were "susceptible" to hacking.  They alleged that a software engineer revealed that Onity locks could be bypassed by a homemade device created with readily available parts.  *Onity*, 2014 WL 3748639, at *1.  They made no allegation that any of their locks had had been hacked, and there was also no allegation that the locks did not operate as intended.  *Id.* at *3.

Relying on a line of authority refusing to find Article III standing based on allegations of injury that might be caused by "future unauthorized access by a third-party," the district court dismissed the complaint, concluding that the potential for future

unauthorized entry was not "certainly impending," and therefore did not confer standing. *Id.* "While it is possible that a potential intruder would in fact attempt to gain entry, 'allegations of **possible** future injury are not sufficient.'" *Id.* (quoting *Clapper*, 568 U.S. at 409 (emphasis in original)).  Similarly here, as discussed above, the basis for Plaintiff's purported injury is too attenuated to confer Article III standing.

> **B.  Plaintiff Must Allege "Something More" Than Mere Conclusory Allegations of Overpayment or Not Receiving the Benefit of What He Actually Bargained For.**

Plaintiff also cannot establish economic injury-in-fact based on conclusory allegations of overpayment or not getting the benefit of the bargain, i.e., that Plaintiff would not have paid for the product had he known it was susceptible to unauthorized access, when there are no plausible factual allegations that Plaintiff's product had the alleged defect, malfunctioned or did not operate as intended.  When interpreting cases involving risk of injury from an alleged product defect that could potentially be exploited in the future, the Ninth Circuit has held that plaintiff must allege "something more" than a conclusory allegation of "overpayment" to confer Article III standing.  *See Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 970 (N.D. Cal. 2015), *aff'd*, 717 F. App'x 720 (9th Cir. 2017) ("When economic loss is predicated solely on how a product functions . . . something more is required than simply alleging an overpayment for a 'defective' product."); *see also Papasan v. Dometic Corp.*, No. 16-cv-02117-HSG, 2017 WL 4865602, at *6 (N.D. Cal. Oct. 27, 2017) ("[W]here the alleged economic loss arises solely from a defect in a product, but that product has not yet failed to perform, 'something more' is required beyond simply alleging overpayment for a defective product."); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 847 (N.D. Cal. 2012) (finding no standing where plaintiff alleged that Apple's online App Store contained security flaws that allowed third-party software applications to upload user information from their mobile devices without permission," but did "not allege [ ] that a third-party App developer actually misappropriated her personal information, only that her personal

information is at a greater risk of being misappropriated.").

In *Cahen*, the plaintiffs filed a false advertising putative class action against three auto manufacturer defendants alleging that defendants have equipped their vehicles with computer technology that is susceptible to being hacked by third parties. 147 F. Supp. 3d at 958-59. Among the claims asserted on behalf of a California subclass, the plaintiffs brought claims under the UCL, FAL and CLRA, as well as for breach of implied warranty of merchantability, based on the allegation that despite the defendants' knowledge of "significant security vulnerabilities," they marketed their vehicles as "safe." *Id.* at 959-60. Defendants moved to dismiss on various grounds including that plaintiffs failed to establish Article III standing because they cannot assert injury in fact based on the risk of future harm from the alleged product defect (i.e., that defendants' vehicles are susceptible to hacking by third parties). *Id.* at 966.

Plaintiffs opposed defendants' motion arguing that they "'suffered injury in fact and actual damages resulting from [d]efendants' material omissions and misrepresentations because they paid an inflated purchase or lease price for the Class Vehicles.'" *Id.* at 970. They pointed out that they had alleged facts sufficient to plead an economic injury by alleging that they would not have purchased their vehicles or would not have paid as much as they did and that they paid an inflated purchase price for the vehicles. *Id.* The district court held that plaintiffs failed to establish economic injury in fact to satisfy Article III standing because they had not alleged "the required 'something more' beyond the speculative risk of future harm that underlies the allegations of economic damage." *Id.* at 971. The court noted that absent something more, allegations of "overpayment" or loss of the "benefit of the bargain" "cannot obscure that the alleged economic injury rests solely on the existence of a speculative risk of future harm." *Id.* at 970-71.

The Ninth Circuit affirmed stating:

> Plaintiffs have failed to sufficiently allege an injury due to overpaying
> for their vehicles. For their UCL, CLRA, and FAL claims, plaintiffs
> allege that they suffered an injury because they either would not have

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
-11-
Case No. 2:22-cv-08943-JLS-AS

purchased their vehicles or would have paid less for them had they
known about these hacking risks. This economic loss theory is not
credible, as the allegations that the vehicles are worth less are
conclusory and unsupported by any facts.  The district court was
correct in noting that "plaintiffs have not, for example, alleged a
demonstrable effect on the market for their specific vehicles . . . [nor]
have they alleged a risk so immediate that they were forced to replace
or discontinue using their vehicles, thus incurring out-of-pocket
damages." . . . [P]laintiffs have only made conclusory allegations that
their cars are worth less and have not alleged sufficient facts to
establish Article III standing.

717 F. App'x at 723-24.

Likewise, in *Papasan*, the plaintiff alleged that defendant sold refrigerators with a
"structural flaw" that "create[d] an unreasonable risk of fire and explosion," but the
plaintiff had used her own refrigerator "without any apparent problem."  *Id.* at *1, *6.
The court dismissed her claim for lack of Article III standing, finding that she had failed
to show "she suffered tangible losses—economic, functional, or otherwise—from having
purchased an allegedly defective Dometic refrigerator."  *Id.* at *6; *see also Boysen v.
Walgreen Co.*, No. 11–cv–06262–SI, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012)
(upon motion to dismiss, injury in fact was speculative where plaintiff brought claims
alleging defendant failed to disclose the presence of lead and arsenic in its juice, but
where plaintiff failed to plead facts that show a likelihood of physical harm caused by the
chemicals).

So it here.  Like the plaintiffs in *Cahen*, *Papsan* and *Boysen*, Plaintiff here does not
allege any demonstrably false misrepresentations of value, but rather makes conclusory
allegations that the Products are worth less because of the risk of future injury—a third
party criminal exploiting the alleged lock box vulnerability to gain unauthorized access to
its contents and then potentially the owner's home.  More basically, Plaintiff also does
not allege facts plausibly demonstrating that his lock box has this purported product
defect, much less that any third party gained unauthorized access to his lock box or home.
Plaintiff has failed to plead "something more" beyond the conclusory allegation that he

overpaid for his lock box or that he did not get the benefit of the bargain.  His alleged economic injury, as currently pled, rests only upon a speculative risk of future harm—not actual, tangible losses.  *See Maya*, 658 F.3d at 1069; *see also Cahen*, 147 F. Supp. 3d at 970 ("In other words, an economic injury that rests on the risk presented by an underlying product defect fails to establish injury in fact if the underlying risk is itself speculative."). Accordingly, because Plaintiff has not established Article III standing based on an overpayment theory of injury, the FAC in its entirety should be dismissed.

## V.   **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's motion to dismiss in its entirety.

DATED:  March 24, 2023

**FOLEY & LARDNER LLP**
Jaikaran Singh
Kelsey Finn


*/s/ Jaikaran Singh*
Jaikaran Singh
Attorneys for Defendant Master
Lock Company LLC