1
2
3
4

Benjamin Gubernick (SBN 321883)
**GUBERNICK LAW P.L.L.C.**
10720 W. Indian School Rd.,
Suite 19, PMB 12
Phoenix, AZ 85037
623-252-6961
ben@gubernicklaw.com

5
6
7
8
9

David N. Lake, State Bar No. 180775
**LAW OFFICES OF DAVID N. LAKE,**
 **A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 479-9990
Email: david@lakelawpc.com

Attorneys for Plaintiff

10

11          **UNITED STATES DISTRICT COURT**

12          **CENTRAL DISTRICT OF CALIFORNIA**

13

14

ANTHONY PAN, an individual;

15                      Plaintiff,

16          v.

17

MASTER LOCK COMPANY, LLC., a
Delaware corporation;

18

19                      Defendant.

20

21

22

CASE NO.:  2:22-cv-08943-JLS-AS

**PLAINTIFF ANTHONY PAN'S OPPOSITION TO DEFENDANT MASTER LOCK COMPANY LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: May 12, 2023
Time: 10:30 a.m.
Ctrm: 8A, 8th Floor
Judge: Hon. Josephine L. Staton

Complaint filed: December 9, 2022
FAC filed: March 10, 2023

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................. 1

II.  FACTUAL BACKGROUND ................................................ 2

III.  LEGAL STANDARD ........................................................... 3

IV.  ARGUMENT ........................................................................ 4

    A.  Defendant's Rule 8, 9(b), And 12(b)(6) Arguments Are Entirely Undeveloped. ................................................. 4

    B.  The FAC Establishes Plaintiff's Article III Standing. ........................... 4

        1.  Plaintiff Has Adequately Alleged An Article III Injury. .............. 5

        2.  Defendant's Arguments Are Wholly Without Merit. ................... 6

V.  LEAVE TO AMEND ......................................................... 16

VI.  CONCLUSION ................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Berke v. Whole Foods Mkt., Inc.*,
   No. CV 19-7471 PSG (KSX), 2020 WL 5802370 (C.D. Cal. Sept. 18, 2020) ..... 6, 7, 14

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ................................................................. 9, 10

*Cahen v. Toyota Motor Corp.*,
   147 F. Supp. 3d 955 (N.D. Cal. 2015) ...................................... 11, 12, 14, 15

*Chavez v. Blue Sky Nat. Beverage Co.*,
   340 F. App'x 359 (9th Cir. 2009) ................................................................. 5

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398, (2013) ................................................................................... 11

*Degelmann v. Advanced Med. Optics, Inc.*,
   659 F.3d 835 fn. 1 (9th Cir. 2011) ............................................................. 10

*Henriquez v. ALDI Inc.*,
   No. 222CV06060JLSJEM, 2023 WL 2559200 (C.D. Cal. Feb. 7, 2023) ............... 6, 13

*Hibbs v. Dep't of Human Resources*,
   273 F.3d 844 fn. 34 (9th Cir. 2001) ............................................................. 4

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 fn. 3 (9th Cir. 2013) ........................................................ 5, 13

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) ......................................................... 16

*In re Takata Airbag Prod. Liab. Litig.*,
   396 F. Supp. 3d 1101 (S.D. Fla. 2019) ........................................................ 15

*In re Toyota Motor Corp.*,
   790 F. Supp. 2d 1152 (C.D. Cal. 2011) ............................................. 12, 15, 16

*Kwikset v. Superior Ct.*,
   120 Cal.Rptr.3d 741, 246 P.3d 877 ............................................................. 13

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................... 3, 6

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ...................................................................................... 6

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) .................................................................. 2, 8

*McMillan v. Connected Corp.*,
   No. CV1003297MMMJCGX, 2010 WL 11549680 (C.D. Cal. Dec. 6, 2010) .............. 9

*Pirozzi v. Apple Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012) ....................................................... 8, 9

*Riva v. Pepsico, Inc.*,
   82 F.Supp.3d 1045 (N.D.Cal.2015) ............................................................ 14

*Spokeo, Inc. v. Robins*,
   578 U.S. 330, (2016) .................................................................................... 4

*Thornhill Publ'g Co. v. Gen. Tel.,*
   *Elec.*, 594 F.2d 730 (9th Cir. 1979) ........................................................... 3

*U.S. Hotel & Resort Mgmt., Inc. v. Onity Inc.*,
   No. 13-1499, 2014 WL 3748639 (D. Minn. July 30, 2014) .................................. 10, 11

*United States v. Aguilar*,
   782 F.3d 1101 (9th Cir. 2015) ..................................................................... 4

*Wells Fargo Bank, N.A. v. Renz*,
   795 F. Supp. 2d 898 (N.D. Cal. 2011) ........................................................ 4

*Williams v. Eastside Lumberyard & Supply Co.*,
   190 F. Supp. 2d 1104 (S.D. Ill. 2001) ........................................................ 4

*Wright v. Costco Wholesale Corp.*,
   2023 WL 210936 (N.D. Cal. Jan. 17, 2023) .......................................... 6, 12, 13

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................. 3, 4

Rule 8, 9(b), And 12(b)(6) ............................................................. 4

Anthony Pan ("Plaintiff") through undersigned counsel, responds as follows to Defendant Master Lock Company LLC's ("Defendant" or "Master Lock") "Motion to Dismiss Plaintiff's First Amended Complaint" (Dkt. No. 22, "Def. Mot."). As explained below, Defendant's motion lacks merit and warrants denial.

## I. INTRODUCTION

A vendor sets up shop selling expensive rocks. The vendor tells people the high prices it charges for its rocks are worth it because the rocks keep tigers away. However, the vendor knows the rocks have no such properties. In reliance on the vendor's representations, a customer purchases a rock, but later learns it does not repel tigers as the vendor had said. The customer sues the vendor. The vendor moves to dismiss because although the customer paid the premium price for the rock, the customer has yet to be mauled by a tiger. Should the motion be granted?

As *The Simpsons* episode the preceding hypothetical is adapted from recognized, the vendor's argument is an example of specious reasoning.[1] That is because the rock does not do anything – as Lisa Simpson said, "it's just a stupid rock." Sure, there are no tigers around, but people rarely encounter tigers outside zoos anyway. The customer was defrauded not because the rock failed to prevent a tiger attack, but rather because the vendor claimed the rock had properties it did not have – purported properties which justified the premium price charged by the vendor and paid by the customer.

Master Lock's motion fails for the same reason. Defendant tells consumers that its lock boxes provide "secure" storage for house keys and will resist attacks from intruders. But as Defendant has known for years, its lock boxes can be opened in seconds, without tools, by anyone. If the word "secure" means anything, it does not mean that.

Plaintiff bought a lock box from Defendant based on Defendant's misleading advertising. The First Amended Complaint ("FAC") identifies the precise statements Plaintiff was exposed to and explains why they were fraudulent. The FAC further alleges

---

[1] The Max Power Way, S07E23-The Rock that Keeps Tigers Away, YouTube, Aug. 29, 2019 available at https://www.youtube.com/watch?v=4GzMizVAl-0.

that Plaintiff would not have purchased a lock box from Defendant – or would have only been willing to pay substantially less – had he known the truth. Hence, he suffered "a quintessential injury-in-fact." *Maya v. Centex Corp*., 658 F.3d 1060, 1069 (9th Cir. 2011). Defendant's motion should be denied.

## II.  FACTUAL BACKGROUND

*"Decoding and opening this is really a trivial matter to someone with just a little bit of information. As such, it is definitely not a product I would rely on to secure a key."*[2]

Defendant sells combination lock boxes to store house keys on the outside of people's homes (the "Products"). *See* First Amended Complaint (Dkt. No. 20, "FAC") at ¶ 1. Defendant's advertising centers around the claim that the Products are secure from unauthorized access. *Id*. at ¶ 21. According to promotional images Defendant uses on its Amazon.com listings, the Products are preferable to hiding a key under a doormat or flowerpot:



*Id*. at ¶ 22. Claims that the Products are secure and resistant to attacks by burglars are also

---

[2] LockPickingLaywer, [966] Decoded Without Tools: Master Lock "Safe Space" Key Box, YouTube, Sept. 30, 2019 available at
https://www.youtube.com/watch?v=EyFop7vyAjc (cited by FAC at ¶ 38, fn. 8) at 1:45-1:58.

made on the Products' clamshell packaging. *Id.* at ¶ 22.

What Master Lock does not tell people, though, is that anyone can open the Products with minimal skill and effort. *Id.* at ¶ 34. By applying firm pressure to the Open Lever while testing the buttons or code wheels, a user can quickly learn which buttons/code wheel positions comprise the combination. *Id.* at ¶¶ 34-35, 40. As the order the values are entered is irrelevant, that is all the information an unauthorized user needs to open the lock box. *Id.* at ¶ 33. Videos with close to 2 million combined views have been available on YouTube for years demonstrating how to exploit the Products' vulnerability to decoding. *Id.* at ¶¶ 36, 38. At all relevant times, Master Lock knew the Products could be quickly and easily decoded and opened by anyone. *Id.* at ¶ 41. The Products' vulnerability to decoding is inherent in their design. *Id.* at ¶¶ 39-40. Burglars target homes that use the Products. *Id.* at ¶ 47. Indeed, using the Products makes a consumer's house *less* secure. *Id.* at ¶ 32.

In August of 2021, Plaintiff purchased one of the Products, a 5422D lock box on Amazon.com to store a spare house key on the outside of his home. *Id.* at ¶¶ 48-49. He purchased the lock box because Defendant represented that it provided "Secure Storage for Keys." *Id.* at ¶ 50. Had Plaintiff known that Defendant's representations were false, he would have refrained from purchasing the Product altogether, or would only have been willing to pay substantially less. *Id.* at ¶ 52.

### III.  LEGAL STANDARD

To establish standing to sue in federal court, a plaintiff must demonstrate: (1) an injury-in-fact, i.e. "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation, meaning that the injury is "fairly traceable to the challenged action of the defendant"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted).

When a Defendant makes a facial challenge to a complaint's adequacy under Fed. R. Civ. P. 12(b)(1), courts presume the allegations in the complaint are true. *Thornhill*

*Publ'g Co. v. Gen. Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979). Dismissal must be denied where the complaint has "clearly ... allege[d] facts demonstrating each element [of standing]." *Spokeo, Inc. v. Robins*, 578 U.S. 330 at 338, (2016), as revised (May 24, 2016) (quotations omitted).

## IV.  ARGUMENT

### A.    Defendant's Rule 8, 9(b), And 12(b)(6) Arguments Are Entirely Undeveloped.

Defendant purports to bring its motion under "Federal Rules of Civil Procedure 8, 9(b), 12(b)(1) and (b)(6)." Def. Mot. at 1. The "Legal Standard" section in Defendant's memorandum lays out the standard for Rule 8, 9(b), and 12(b)(1) and (b)(6) motions to dismiss. *See* Dkt. No. 22-1 ("Def. Mem.") at 5-6.

Puzzlingly, however, the sole basis for dismissal Defendant's memorandum argues for is Rule 12(b)(1). The memorandum contains no arguments or authority explaining why Defendant believes it is entitled to dismissal under Rules 8, 9(b), or 12(b)(6).

Plaintiff cannot respond to arguments Defendant fails to develop, and the Court should decline to consider them. *See generally*, *United States v. Aguilar*, 782 F.3d 1101, 1108 (9th Cir. 2015) (court not required to consider an undeveloped argument that is not supported by citations to authority); *Hibbs v. Dep't of Human Resources*, 273 F.3d 844, 873 fn. 34 (9th Cir. 2001) (rejecting an argument as "too undeveloped to be capable of assessment"); *Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d 898, 911 (N.D. Cal. 2011) (motion for summary judgment denied where a party merely "offer[s] a string citation to various cases and California civil jury instructions, without providing any explanation or analysis of how these authorities support their position."); *Williams v. Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1114 (S.D. Ill. 2001) ("A judge is ... neither required to hunt down arguments [defendants] keep camouflaged nor required to address perfunctory and undeveloped arguments.").

### B.    The FAC Establishes Plaintiff's Article III Standing.

Turning to Rule 12(b)(1), Defendant contends that Plaintiff has not satisfied the

injury-in-fact requirement for Article III standing. Def. Mem. at 6. Defendant does not challenge any of the other requirements for Article III standing.

Defendant's motion fails because Plaintiff has adequately pled Master Lock's material representations duped him into buying a lock box and paying more for it than he would have been willing to pay had Master Lock been truthful. That is enough to confer Article III standing, and none of Defendant's contrary arguments have merit.

### 1.    Plaintiff Has Adequately Alleged An Article III Injury.

The FAC alleges that Plaintiff saw the promotional image on Defendant's Amazon.com product page claiming the 5422D provided "secure storage" or house keys. FAC at ¶¶ 22, 50. In reliance on the image and Defendant's other affirmative representations, he bought the product. *Id.* at ¶ 50. Had he known Defendant's representations were false, he would not have made the purchase. *Id.* at ¶ 52.

"[W]hen, as here, Plaintiffs contend that [they] paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so they have suffered an Article III injury in fact." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 at fn. 3 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (quotations omitted). *See also*, *Chavez v. Blue Sky Nat. Beverage Co.*, 340 F. App'x 359, 361 (9th Cir. 2009) ("allegations … are sufficient to allege that Chavez has been injured-in-fact" because he "lost money or property when he purchased a Blue Sky Beverage. ... In particular, he lost the full value of the price he paid ... which he would not have paid had he known the truth about the geographic origin of the products.")

The FAC plausibly alleges that Plaintiff was misled by Defendant's advertising. The whole point of a lock box is to give the owner control over who opens it. Yet Defendant has designed the Products in such a way that anyone can, with minimal effort and without tools, decode the user-selected combination. In other words, Defendant has chosen to slap the word "secure" on a product it knows is unsecure. It is difficult to imagine a more material misrepresentation. Unsurprisingly, burglars target homes that use the Products.

Absent Defendant's affirmative misrepresentations, no reasonable consumer would buy the Products.

In summary, "the claimed injury here 'aligns with the well-established principle that a monetary harm is a sufficiently concrete injury.'" *Henriquez v. ALDI Inc.*, No. 222CV06060JLSJEM, 2023 WL 2559200, at *5 (C.D. Cal. Feb. 7, 2023) (citing *Wright v. Costco Wholesale Corp.*, 2023 WL 210936, at *4 (N.D. Cal. Jan. 17, 2023)). Defendant will have an opportunity later in the proceedings to contest whether its representations were misleading, whether they were material, and whether Plaintiff relied on them. But at this juncture, nothing more is required to establish Article III standing.

## 2.    Defendant's Arguments Are Wholly Without Merit.

### a.    Defendant's "Testing" Argument.

Defendant first asserts that Plaintiff lacks Article III standing because the FAC does not allege he "tested the lock box for the alleged vulnerability." Def. Mem. at 8. Defendant cites no authority requiring such testing. To the contrary, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Defs. of Wildlife*, 504 U.S. at 561(quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

Judge Gutierrez's opinion in *Berke v. Whole Foods Mkt., Inc.*, No. CV 19-7471 PSG (KSX), 2020 WL 5802370 (C.D. Cal. Sept. 18, 2020) is instructive. In *Berke*, the plaintiff alleged that Starkey Water was misleadingly labeled as "pure" but contained high levels of arsenic. The defendants moved to dismiss for lack of Article III standing because the complaint contained "no allegation as to how much arsenic was in the Starkey Water that Plaintiff *himself bought*." *Id.* at *7 (emphasis original). The court denied the motion because:

> The [complaint] sufficiently alleges that Starkey Water in general contains *higher* levels of arsenic as compared with other bottled water on the market (even if all Starkey bottles do not contain arsenic above the federal limit). While there is some ambiguity in the pleadings as to the quality of each and

> every Starkey bottle, reading the allegations in the light most favorable to Plaintiff, the SAC has sufficiently alleged that all Starkey Water had comparatively high arsenic content to other bottles on the market, and Plaintiff would not have purchased or paid a premium for the product if he had known this. ... Defendant's argument therefore fails at this stage based on the pleadings.

*Id.* (Emphasis original).

The same reasoning applies here. The FAC alleges that the Products' vulnerability to decoding is "inherent" in their design. FAC at ¶ 40. Moreover, the FAC explains exactly why the Products can be quickly and easily decoded. *Id.* at ¶ 39. The YouTube videos the FAC cites also contain detailed information about the design decisions Master Lock made that allow the exploit to work.[3] There is nothing in the FAC to support Defendant's hypothetical contention that Plaintiff's lock box (or anyone else's) might not be susceptible to the exploit. What matters here is the disconnect between how Defendant advertised the Products ("Secure Storage for Keys"), and how Defendant designed its products (easily decoded by anyone with a little knowledge). Defendant's claim that the FAC's allegations are "far-fetched and legally insufficient", (Def. Mem. at 9), is pure *ipse dixit* and should be disregarded.

### b. Defendant's "Risk Of Future Harm" Arguments.

The balance of Defendant's memorandum amounts to riffs on the same basic contention: Plaintiff "[got] the value that he paid for" because the vulnerability on his lock box "was [not] actually exploited by an unauthorized user." Def. Mem. at 8.

To start with, Defendant's argument is based on faulty logic, indistinguishable from the rock vendor pointing out that the customer has yet to be mauled by a tiger. In that hypothetical, the customer paid for a tiger-repelling rock, but received a rock that did not have that attribute. Whether or not the customer is ultimately attacked by a tiger is beside the point. Likewise, Plaintiff paid for a lock box that Defendant promised was "secure."

---

[3] *See, e.g.,* BosnianBill, *(1516) Airbnb Test Lock #4 (Master 5425D)*, YouTube, June 19, 2019, available at https://www.youtube.com/watch?v=jEz5-MdIzVQ at 1:33-1:50, 5:04-5:39 (cited in FAC at ¶ 38, fn. 7) (explaining that the Products can be easily decoded because Defendant "did not bother" to put a disconnect between the Open Lever and the code wheels).

However, the product Defendant sold him never had that characteristic. Whether Plaintiff's home was burglarized is irrelevant. To emphasize: this is a false advertising case. The FAC does not seek recovery for the value of stolen goods or damage caused by burglars.[4] Plaintiff's injury occurred when he purchased one of the Products in reliance on Defendant's affirmative misrepresentations. *See, e.g., Maya*, 658 F.3d at 1069 ("quintessential injury-in-fact" where "as a result of defendants' actions, [plaintiffs] paid more for their homes than the homes were worth at the time of sale.").

Nonetheless, Defendant insists that Plaintiff's injury is premised on an "entirely hypothetical risk that a possible injury may occur at some point in the future." Def. Mem. at 9. But Defendant's position finds no support in case law. Indeed, the cases Master Lock relies on in its memorandum mostly refute its arguments. To start with, Defendant summarizes the holding in *Pirozzi v. Apple Inc*., 913 F. Supp. 2d 840 (N.D. Cal. 2012), as follows:

> [The court found] no standing where plaintiff alleged that Apple's online App Store contained security flaws that allowed third-party software applications to upload user information from their mobile devices without permission, but did not allege that a third-party App developer actually misappropriated her personal information, only that her personal information is at a greater risk of being misappropriated.

Def. Mem. at 10 (citing *Pirozzi*, 913 F. Supp. 2d at 847) (quotations omitted). However, Defendant only tells half the story. The *Pirozzi* plaintiff *also* claimed standing based on a fraudulent misrepresentation theory—a theory the court made clear did ***not*** require a showing that data misappropriation was imminent:

> Plaintiff alleges *two injuries*: (1) *that she overpaid for her Apple Device and/or was induced to purchase an Apple Device*; and (2) misappropriation of her valuable personal information. With respect to the first injury, Plaintiff alleges that she was "misled as to the nature and integrity of Apple's products. Apple has repeatedly advertised that its products were safe and secure. Apple has further assured consumers that it closely monitors the apps available in the App Store. Plaintiff acted in response to the statements made by Apple when she purchased an Apple Device. Plaintiff based her decision to purchase

---

[4] An actual burglary would only serve as a second and additional layer of damage, not the sole and exclusive source of damage.

the Apple Device and/or purchase apps through the App Store in substantial part on Apple's misrepresentations.

*Overpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing.* Counts I through IV, for violations of California's UCL, FAL and CLRA, and Negligent Misrepresentation, allege that Plaintiff overpaid and/or purchased an Apple Device based upon Apple's alleged misrepresentations. However, Plaintiff fails to allege specifically which statements she found material to her decision to purchase an Apple Device or App. Based on the failure to allege these facts, Plaintiff has not suffered an injury-in-fact that is caused by the complained of conduct.

With respect to the *second harm* identified, misappropriation of her personal information, Plaintiff has not alleged that a third-party App developer actually misappropriated her personal information, only that her personal information is at a greater risk of being misappropriated.

913 F. Supp. 2d at 846–47 (quotations and citations omitted) (emphasis added). The only shortcoming in the overpayment theory was the plaintiff's failure to allege Apple's fraudulent misrepresentations with specificity. And as discussed, Defendant has not advanced any arguments for how the FAC suffers from a similar defect.[5]

Defendant's discussion of *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), similarly employs selective quotation. In *Birdsong*, the plaintiffs alleged that earbud headphones included with Apple iPods could cause hearing damage at high volumes. *Id.* at 958. However, the plaintiffs did "not claim that they, or anyone else, ha[d] suffered or [was] substantially certain to suffer hearing loss." *Id.* at 961. Instead, the plaintiffs claimed "that the iPod's inherent risk of hearing loss has reduced the value of their iPods and deprived them of the full benefit of their bargain because they [could not] 'safely' listen to music." *Id.* Moreover, "[t]he plaintiffs d[id] not even claim that they used their iPods in a

---

[5] Such arguments would be unsuccessful even if Defendant had developed them, as the FAC outlines the "who, what, where, and when" of Defendant's fraud. *See, e.g., McMillan v. Connected Corp.*, No. CV1003297MMMJCGX, 2010 WL 11549680, at *4 (C.D. Cal. Dec. 6, 2010). The "who" is Master Lock. FAC at ¶¶ 21-22, 48. The "what" is Defendant's claim that the Products provide "secure storage" for house keys. *Id.* The "where" is Master Lock's product page on Amazon.com. *Id.* at ¶¶ 48-50. The "when" is August 5, 2021. *Id.* at ¶ 48.

way that exposed them to the alleged risk of hearing loss." *Id*. at 960. Thus, the court found that "the alleged loss in value d[id] not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk of hearing loss to other consumers who may or may not choose to use their iPods in a risky manner." *Id*. at 961.

From that language, Defendant concludes that "it is well settled that a plaintiff cannot establish injury-in-fact, economic or otherwise, based on an entirely hypothetical risk that a possible injury may occur at some point in the future." Def. Mem. at 9.

But Defendant conveniently omits the second part of the court's holding:

> The plaintiffs' benefit of the bargain theory fares no better. They have not alleged that they were deprived of an agreed-upon benefit in purchasing their iPods. *The plaintiffs do not allege that Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time*. In fact, the plaintiffs *admit that Apple provided a warning against listening to music at loud volumes*. The plaintiffs' alleged injury in fact is premised on the loss of a "safety" benefit that was *not part of the bargain to begin with*.

*Birdsong*, 590 F.3d at 961 (emphasis added). As in *Pirozzi*, the court distinguished between two theories of injuries that can give rise to Article III standing: one based on harm caused *by the product*, and one based on harm caused *by the seller's false representations*. Indeed, the Ninth Circuit later stated that *Birdsong* was unhelpful where "there is allegedly false labeling and advertising at issue in th[e] case[.]" *Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 840 at fn. 1 (9th Cir. 2011), *vacated*, 699 F.3d 1103 (9th Cir. 2012)

Finally, Defendant's memorandum offers a prolonged discussion of *U.S. Hotel & Resort Mgmt., Inc. v. Onity Inc.*, No. 13-1499, 2014 WL 3748639 (D. Minn. July 30, 2014) (cited by Def. Mem. at 9-10). However, Master Lock misses the mark with its contention that the case is "instructive here." Def. Mem. 9. In *Onity*, the plaintiff hospitality companies alleged that the defendant's keycard readers could be hacked using a "homemade opening device." *Id*. at *1. The only injuries the plaintiffs claimed were "the costs they have incurred to remedy the 'defect' in order to prevent the future injury of a third party's unauthorized access." *Id*. at *3. In other words, the plaintiff spent money to *prevent* a highly uncertain injury from occurring at an indefinite point in the future. The

court found that Article III standing was lacking because the "Plaintiffs ha[d] not plausibly alleged that any unauthorized access of their hotel rooms [was] truly 'imminent.'" *Id. See also*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, (2013) ("[a] threatened injury must be certainly impending to constitute injury in fact … allegations of possible future injury are not sufficient." (quotations omitted)).

However, that is not Plaintiff's theory. To illustrate the difference, consider again the customer who purchased a rock based on the vendor's promise that it would repel tigers. A situation analogous to *Onity* would occur if: (1) the customer learned that the rock did not keep tigers away; and then (2) purchased a new tiger deterrent; and finally, (3) sued the vendor *for the price of the new tiger deterrent*.

As already discussed, the injury for which Plaintiff seeks recovery occurred when Master Lock deceived him into buying a product he would not otherwise have purchased. The present matter, unlike *Onity*, is a consumer fraud case.

### c.   *Defendant's "Something More" Arguments.*

Defendant next contends that Plaintiff "has failed to plead 'something more' beyond the conclusory allegation that he overpaid for his lock box[.]" Def. Mem. at 12-13. Defendant's argument is based on Judge Orrick's opinion in *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 970 (N.D. Cal. 2015), aff'd, 717 F. App'x 720 (9th Cir. 2017).

In *Cahan*, the plaintiffs alleged that the defendants' cars were "susceptible to remote hacking" due to insecure software. 147 F. Supp. 3d at 959. As no such incidents had occurred outside controlled environments, the plaintiffs' case was based on the "speculative premise that a sophisticated third party cybercriminal may one day successfully hack one of plaintiffs' vehicles." *Id*. at 966. The alleged defect was present not just on the defendants' vehicles, but on "*all* vehicles manufactured post-2008." *Id*. at 269 (emphasis original). The plaintiffs advanced two theories of Article III injury: (1) the "risk of future harm", (*id*. at 966); and (2) that "economic loss … flow[ed] from the risk of future injury." *Id*. at 969.

As to the first theory of liability, the court held that the plaintiffs had "failed to plead

that they … face[ed] a credible risk of hacking." *Id*. The court similarly rejected the second theory because the "[p]laintiffs here do not assert any demonstrably false misrepresentations of value, but rather make conclusory allegations that their cars are worth less because of the risk of future injury." *Id*.

Master Lock's reliance on *Cahan* is misplaced because: (i) *Cehen* (and the other cases Defendant cites) are inapplicable to false advertising cases like this one; and (ii) even if they were applicable here, the FAC's allegations are sufficient to plead an injury-in-fact under *In re Toyota Motor Corp*., 790 F. Supp. 2d 1152 (C.D. Cal. 2011).

(i)    *Cahan* And Defendant's Other Authorities
       Are Inapplicable To Affirmative
       Misrepresentation Cases.

As with nearly all Defendant's cited authority, *Cahan* is at its heart a product defect case, not a false advertising case. Although the opinion notes that the defendants marketed their cars as safe generally and advertised various safety features, (147 F. Supp. 3d at 959), there is no indication that any of the defendants claimed their vehicles were resistant to remote hacking. Moreover, there was no reason to believe remote hacking resistance factored into anyone's purchasing decision or affected the vehicles' market price. *Id*. at 970.

A more relevant Judge Orrick opinion is *Wright v. Costco Wholesale Corp*., No. 22-CV-04343-WHO, 2023 WL 210936 (N.D. Cal. Jan. 17, 2023). In *Wright*, the plaintiff purchased cans of tuna in reliance on "promises and representations by Costco on the product's labeling, packaging, and advertising that the product was 'dolphin safe.'" *Id*. at *1 (N.D. Cal. Jan. 17, 2023). However, the defendant's fishing methods were "hazardous to marine mammals like dolphins." *Id*. at *2. The defendant filed a motion to dismiss for Article III standing, which the court denied:

> Costco argues that Wright has not alleged a concrete injury because the [complaint] does not allege that any tuna she purchased from Costco came from a vessel that either deployed a net that encircled any dolphin or that killed or seriously injured any dolphin. … And, it contends, there is no concrete injury to Wright that arises from the mere speculative *possibility* that

dolphins could have been harmed or seriously injured through use of longline fishing methods.

Costco misses the crux of Wright's complaint. The [complaint] alleges that, had Wright known that Costco's canned tuna was not dolphin-safe, she would not have bought it, and certainly would not have paid a premium for such a valued perceived benefit. …. As alleged, Wright was harmed by paying for a product that she would not have purchased but for Costco's deceptive statements, and/or by paying a premium price for that product. … This also aligns with the well-established principle that a monetary harm is a sufficiently concrete injury. … The FAC clearly alleges a monetary harm in the $15 that Wright paid for the product.

*Id.* at *4 (emphasis original) (quotations and citations omitted). Notably, this Court recently followed *Wright's* reasoning in denying a motion to dismiss:

ALDI argues that Henriquez has not alleged a concrete injury because she alleges only "the mere speculative *possibility* that dolphins could have been harmed or seriously injured through use of purse seine or longline fishing methods." Henriquez offers only "general allegations" concerning dolphin mortalities arising from those practices, which, ALDI argues, are "not even speculative criticism that an Aldi supplier caught tuna in a manner resulting in bycatch, much less resulting in serious harm or mortality to a dolphin."

ALDI's argument misses the mark. The harm that Henriquez alleges here is not dependent on whether dolphins were killed in relation to the sourcing of the can of tuna that she purchased. Rather, Henriquez alleges that she was harmed by paying for tuna that she would not have purchased absent ALDI's allegedly deceptive representations and by paying a premium for the tuna. … As noted recently in a similar case, the claimed injury here "aligns with the well-established principle that a monetary harm is a sufficiently concrete injury."

*Henriquez*, 2023 WL 2559200 at *5 (emphasis original) (quoting *Wright*, 2023 WL 210936 at *4).

In both *Henriquez* and *Wright*, the consumers suffered Article III injuries when they paid money they otherwise would not have based on allegedly false representations. Whether any dolphins were actually injured is beside the point. *See also*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013), as amended on denial of reh'g and reh'g en banc (July 8, 2013) (recognizing that "falsely labeling a watch as a Rolex would be an actionable misrepresentation even if the watch was a 'functional[ ] equivalent' of a Rolex") (citing to *Kwikset v. Superior Ct.*, 120 Cal.Rptr.3d 741, 246 P.3d 877 at 890).

In the present matter, the Products' purported resistance to unauthorized access is their primary selling point. Defendant's advertising centers around it, and to a typical consumer it is perhaps the *only* feature that matters. And as the FAC alleges, Plaintiff relied on Master Lock's false representations. That is enough to confer Article III standing. As Judge Gutierrez held in *Berke*:

> [T]he Court rejects Defendant's argument that this is a product defect case masquerading as a consumer fraud suit. While plausible allegations that a plaintiff purchased a defective or unsafe product are sufficient to make out an economic injury … courts have held that where the complaint does not plausibly allege that a product is unsafe, its purchase may not constitute an economic injury. … *However, courts in this Circuit have distinguished these cases from those where the allegations at issue rely on false or misleading advertising.* … While Defendants argue that Plaintiff's standing allegations rely on the argument that Starkey Water is unsafe, looking to the [complaint's] allegations as a whole, that is not Plaintiff's theory. .... Rather, the [complaint] focuses on Defendants' allegedly misleading advertising and labeling. Plaintiff alleges that high arsenic in general is distasteful, that Starkey Water products contained relatively higher amounts of arsenic than other bottled water, and that misleading statements including those on the label induced him to purchase a product he would not otherwise have purchased or paid the premium that he did. Accepting these factual allegations as true for purposes of a motion to dismiss, Plaintiff has alleged he spent money he otherwise would have saved but for Defendants' acts of unfair competition. Numerous courts in this circuit have found such allegations sufficient to establish an economic injury.

2020 WL 5802370 at *7–8 (quotations omitted) (emphasis added) (collecting cases). This Court should likewise rebuff Defendant's attempt to convert this matter into a product defect case.

### (ii)   Plaintiff Would Have Standing Even Without Defendant's Affirmative Misrepresentations.

Finally, although unnecessary to resolve Defendant's motion, Plaintiff would have Article III standing even if Master Lock had made no affirmative misrepresentations about the Products' security from unauthorized access.

That is because "a credible threat of harm is sufficient to constitute actual injury for standing purposes." *Cahan*, 147 F. Supp. 3d at 968 (citing *Riva v. Pepsico, Inc.*, 82

F.Supp.3d 1045, 1052 (N.D.Cal.2015)). Indeed, that matches the holding of *In re Toyota Motor Corp.*, where *Cahan* draws its "something more" requirement:

> [Plaintiffs allege] they … thought they bought a safe Toyota vehicle, … but instead bought a defective Toyota vehicle[.] … When the economic loss is predicated solely on how a product functions, and the product has not malfunctioned, the Court agrees that something more is required than simply alleging an overpayment for a "defective" product. As explained, infra, that "something more" could be allegations based on market forces. *It could also be based on sufficiently detailed, non-conclusory allegations of the product defect.*

*In re Toyota Motor Corp.*, 790 F. Supp. 2d at 1165 at fn. 10 (emphasis added). And as already discussed, the FAC explains in detail exactly what gives rise to the Products' vulnerability to decoding, and how anyone who watches a two-minute YouTube video can exploit it. "As long as Plaintiffs do not simply allege that their [products] are 'defective,' but rather offer detailed, non-conclusory factual allegations of the product defect, the economic loss injury flows from the plausibly alleged defect at the pleadings stage." *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1166 (C.D. Cal. 2011). Hence, Defendant is simply wrong in its contention that Plaintiff has "failed to plead 'something more' beyond the conclusory allegation that he overpaid for his lock box[.]" Def. Mem. at 12-13.

For the same reason, Plaintiff need not, as Defendant insists, allege that he has been the victim of "intentional criminal conduct directed at him" by third-party burglars. Def. Mem. at 6. Defendant's argument:

> succeeds only if one assumes that a plaintiff who has not experienced a safety defect does not have a safety defect. If the Court accepts the allegations that all Toyota vehicles had the safety defect at the time of purchase, and the defects were not subsequently remedied through recalls, all Plaintiffs suffered an economic loss *at the time of purchase because they received a defective vehicle*.

*In re Toyota Motor Corp.*, 790 F. Supp. 2d at 1165 (emphasis added). See also, *id.* ("In the present matter, because every lead Plaintiff alleges a safety defect, and defective cars are not worth as much as defect-free cars, Plaintiffs plausibly establish an economic loss."); *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1124 (S.D. Fla. 2019) ("Here,

unlike the alleged risk of future harm in *Cahen*, the … Complaint sets forth numerous allegations of a universal vehicle defect[.]”); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig*., 295 F. Supp. 3d 927, 950 (N.D. Cal. 2018) (in contrast to the allegations in *Cahen*, “when a complaint includes concrete allegations of a current universal vehicle defect ... those allegations plausibly and specifically support an overpayment theory of injury”).

As alleged in the present matter, “a lock box is a recognizable target and therefore must be effective at preventing unauthorized access.” FAC at ¶ 17. Yet the lock boxes Defendant sells are ineffective at preventing unauthorized access. *Id*. at ¶ 17. Using the Products makes a consumer’s home less secure. Thus, the Products are unfit for their ordinary purpose and the consumers who purchased them “suffered an economic loss at the time of purchase because they received a defective [product].” *In re Toyota Motor Corp*., 790 F. Supp. 2d at 1165. To emphasize: the burglarizing of someone’s home is not the manifestation of the Products’ defect. The Products were uniformly defective when they left the factory. They *never* provided secure storage for house keys.

***

It is worth contemplating the absurd results that would ensue if Defendant’s contentions were actually law. A store could sell fire extinguishers with empty canisters that it falsely claimed were loaded. So long as no one’s house burned down, the customers the store defrauded would lack standing to sue. Under Defendant’s logic, those customers received “the value that [they] paid for.” Def. Mem. at 8.

Defendant is incorrect. The store’s customers were injured the moment they paid for a fire extinguisher that could not put out fires. Likewise, Plaintiff suffered an economic injury when he purchased a lock box that could not provide secure storage for his house key.

## V.  LEAVE TO AMEND

To the extent Defendant’s motion is granted in any respect, Plaintiff requests leave to file an amended complaint.

## VI.  CONCLUSION

For the foregoing reasons Defendant's motion should be denied in its entirety.

Respectfully submitted,

Date: April 21, 2023

By:_____
Benjamin Gubernick (SBN 321883)
**GUBERNICK LAW P.L.L.C.**
10720 W. Indian School Rd.,
Suite 19, PMB 12
Phoenix, AZ 85037
623-252-6961
ben@gubernicklaw.com

David N. Lake, Esq.
**LAW OFFICES OF DAVID N. LAKE,**
 **A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Email: david@lakelawpc.com

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true and correct copy of the foregoing was served to the following via the CM/ECF system on April 21, 2023 to all attorneys of record in this matter.

By: <u>/s/ Benjamin Gubernick</u>
        Benjamin Gubernick