JAIKARAN SINGH, CA Bar No. 201355
  jsingh@foley.com
KELSEY FINN, CA Bar No. 334670
  kfinn@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE:  213.486.0065

Attorneys for Defendant Master Lock Company LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY PAN, an individual;<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>MASTER LOCK COMPANY, LLC., a Delaware corporation;<br><br>　　　　　　　Defendant. | Case No. 2:22-cv-08943-JLS-AS<br><br>**DEFENDANT MASTER LOCK COMPANY LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[CLASS ACTION]<br><br>Date:　May 12, 2023<br>Time:　10:30 a.m.<br>Ctrm:　8A, 8th Floor<br>Judge:　Hon. Josephine L. Staton<br><br>Complaint filed: December 9, 2022<br>FAC filed: March 10, 2023 |

## I. INTRODUCTION

Plaintiff's lawsuit places the proverbial cart before the horse, and seeks preemptive redress for purported economic injuries that have not yet occurred for him or anyone else specifically identified in the First Amended Complaint ("FAC"). Relying completely on the purported exploits of three YouTube videos (quintessential hearsay), Plaintiff alleges that five models of Master Lock lock boxes have a design defect that makes them susceptible to decoding. From this, Plaintiff contends that he was duped by the generic statement "secure storage" on the Amazon webpage when he bought his lock box because Defendant failed to disclose these exploits of two YouTubers ("LockPickingLaywer" and "BosnianBill") purportedly demonstrating that the lock boxes are susceptible to decoding. Based on conclusory allegations of overpayment, Plaintiff asserts that he sustained economic injury in paying for a lock box that was not "up to the task." Plaintiff does not point to any specific, on-point representation made by Defendant that its lock boxes were not susceptible to decoding or decoding proof. He also does not allege that his lock box was ever decoded by an unauthorized third party. Nor does he identify anyone else whose lock box was decoded. Instead, Plaintiff's allegations demonstrate that his lock box functioned for its intended use to store his spare housekey.

As Defendant established in its opening brief and will further establish below, federal and Ninth Circuit authority setting the parameters of Article III standing, on the one hand, and the allegations of the FAC, on the other, are woefully mismatched. The Supreme Court requires that to establish standing at the pleading stage, the plaintiff must "clearly allege *facts* demonstrating each element" of a concrete, particularized, and actual injury that is neither speculative nor hypothetical. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)) (emphasis added). Plaintiff has not done that here by a long shot and has no answer to the Ninth Circuit's holding in *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720 (9th Cir. 2017), that a mere allegation of "overpayment" is insufficient to establish standing in a false advertising case asserting a vulnerability that has never manifested for the plaintiff. Instead, as *Cahen* and other courts in the Ninth Circuit have

made clear, where the falsity of a challenged representation turns on the existence of an alleged underlying defect that makes the product vulnerable or susceptible to unauthorized access by a third-party (here, the alleged lock box decoding) that neither the named plaintiff nor other class members are alleged to have experienced, Plaintiff must allege "something more" than a conclusory allegation of "overpayment" to demonstrate injury-in-fact for purposes of conferring Article III standing. Plaintiff's reliance on false advertising cases that did not involve vague alleged misrepresentations premised on an alleged underlying product defect misses the mark. Accordingly, his lack of Article III standing is dispositive of the entire action.

## II. PLAINTIFF'S ALLEGATIONS FAIL TO ESTABLISH HE HAS ARTICLE III STANDING TO PURSUE HIS CLAIMS[1]

Plaintiff lacks Article III standing because he has not met his burden to clearly allege facts demonstrating concrete injury-in-fact. In this case, to plead a concrete injury-in-fact based on economic loss under an overpayment theory, Plaintiff must allege facts demonstrating that his lock box contained a "cognizable defect" that deprived him "of an agreed-upon benefit in purchasing" his lock box for "secure storage." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (plaintiff must show "an invasion of a legally protected interest"). Plaintiff's economic loss theory fails to establish standing because he does not plausibly allege facts that demonstrate an alleged actual misrepresentation about the lock boxes' security or resistance against decoding such that he was deprived of some agreed-upon benefit of the bargain. *See Cambridge Lane, LLC v. J-M Manufacturing Company, Inc.*, Case No. CV 10-6638-GW-PJWx, 2020 WL 8410437, at *6 (C.D. Cal. May 14, 2020)

---

[1] Defendant's motion is brought under Rule 12(b)(1) of Federal Rules of Civil Procedure because the Court should dismiss this case for lack of subject matter jurisdiction. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Defendant's opening brief references motion to dismiss standards under Rule 8, Rule 12(b)(6), and Rule 9(b) because Defendant's challenge for lack of subject matter jurisdiction is on the face of the complaint and therefore implicates pleading standards such as plausibility and pleading with heightened particularity. *Thornhill Pub 'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979); *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

(quoting *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 969 (N.D. Cal. Nov. 25, 2015) ["Plaintiffs here do not assert any demonstrably false misrepresentations of value, but rather make conclusory allegations that their cars are worth less because of the risk of future injury."]).  That is, Plaintiff fails to plausibly allege that his lock box was materially different than advertised.

Plaintiff's Opposition incorrectly argues that because this is a purported false advertising case, his bare conclusions of "overpayment" or that he "would not have purchased" the lock box product but for the Amazon webpage "secure storage" statement are alone sufficient to allege Article III standing.  Plaintiff's reliance on the vague representation on the Amazon webpage of "secure storage" does not translate into a misrepresentation or promise that that lock boxes were not susceptible to decoding.

Under Plaintiff's theory of liability, the statement "secure storage" on the Amazon webpage is allegedly false because the lock boxes have an underlying design defect that makes them susceptible to decoding by unauthorized third parties.  The falsity of the challenged "secure storage" statement thus turns on the existence of a product vulnerability or defect (i.e., the lock boxes' alleged susceptibility to decoding).  But a vague, general statement like "secure storage" does not communicate to reasonable consumers that the lock box is impenetrable to decoding.  This obvious disconnect between the challenged representation (i.e., "secure storage") and alleged underlying defect (i.e., a susceptibility to decoding) makes this case just like *Cahen* in that "something more" is needed to allege injury-in-fact for purposes of establishing Article III standing. *Cambridge Lane*, 2020 WL 8410437, at *6 ("*Clapper's* requirement of an imminent injury, however, can be harmonized with consumer protection case law . . . by recognizing that the more vague the alleged misrepresentation is, the more certain the injury resulting from the impending product failure must be.").

The Ninth Circuit made clear in *Cahen* that dismissal for lack of standing is required when "allegations that the [allegedly defective products] are worth less are conclusory and unsupported by any facts." *Cahen v. Toyota Motor Corp.*, 717 F. App'x

720, 723 (9th Cir. 2017). Plaintiff's Opposition has no response to the Ninth Circuit's decision. Instead, Plaintiff simply ignores it.

And in attempting to distinguish the district court's dismissal, Plaintiff ignores that the *Cahen* plaintiffs asserted and lost on precisely the same theory of standing being asserted here: that had they known of the vehicle software's alleged vulnerability, "they would not have purchased their [vehicles] or would not have paid as much as they did to purchase them." *Cahen*, 147 F. Supp. 3d at 966 (alteration in original). Here, Plaintiff makes the same standing allegation: "Had Plaintiff been aware of the exploit [the alleged vulnerability shown on the YouTube videos], he would not have purchased the 5422D or would only have been willing to pay substantially less for it." (FAC, ¶ 52.)

Plaintiff's assertion that *Cahen* is different from this case because there the defendants did not claim their vehicles were resistant to remote hacking only underscores why *Cahen* applies here. As in *Cahen*, as discussed above, Defendant never claimed or represented that its lock boxes were not susceptible to decoding, were decoding proof, or otherwise impenetrable to unauthorized third-party access. Instead, like the plaintiffs' FAL and CLRA allegations in *Cahen* that the defendants' promotional materials "made numerous [vague] representations concerning the benefits and safety features of the Class Vehicles that were misleading" and failed "to disclose that the Class Vehicles were equipped with defective electronic and computerized components" (*Cahen v. Toyota Motor Corp.*, Case No. 15-cv-01104-WHO, First Amended Complaint ["*Cahen* FAC"], ¶¶ 74-75, Dkt. 37), here the alleged false representation at issue—the words "secure storage" accompanied with images showing that the lock box is preferrable storage compared to hiding a key under an entry doormat or flowerpot (two very common and well-known hiding spots for homeowners to keep a spare key)—is equally as vague and mismatched with the supposed underlying defect of susceptibility to decoding that creates the alleged risk.[2] (FAC, ¶¶ 21, 48-50 [Dkt. 20].)

---

[2] Tellingly, in effort to better match the alleged misrepresentation with underlying defect, Plaintiff's opposition takes great liberties with reading words into (and otherwise mischaracterizing) the "secure storage" statement that are simply not there in the Amazon

Focusing on Plaintiff's failure to demonstrate economic injury-in-fact based on conclusory allegations of overpayment, the similarities in the alleged vague marketing misrepresentations in *Cahen* and this case are especially notable in light of the fact that in both cases there are no allegations that the products at issue did not function for their intended purpose. In *Cahen* there were no allegations that the vehicles did not operate as intended (*see generally Cahen* FAC), and here Plaintiff likewise does not allege that his lock box failed to operate or malfunctioned for its intended storage purpose. In fact, instead, Plaintiff alleges that he purchased the lock box product "to store a spare key on the outside of his home (FAC, ¶ 48)[3], and there are no allegations in the FAC that suggest that his lock box did not work for this intended purpose or failed to provide "secure storage" (much less that anyone gained unauthorized access to his lock box). (*See generally* FAC.) Accordingly, Plaintiff's conclusory allegation that he did not receive the benefit of the bargain (FAC, ¶ 53), is contradicted by facts alleged in the FAC and what Plaintiff has not alleged.

In addition, Plaintiff's contention that the FAC explains why the lock box products can be decoded or are vulnerable (based on the YouTube videos' exploits) is beside the point for establishing injury-in-fact in this case given the mismatch with the alleged misrepresentation. Notably, the plaintiffs in *Cahen* also alleged in detail why the vehicles' computer systems lacked the security making them susceptible to third party hackers. (*Cahen* FAC, ¶¶ 32-40.) The court, however, pointed out that plaintiffs' detailed allegations failed to show that plaintiffs overpaid based on the vehicles' susceptibility to hacking despite defendants' alleged marketing misrepresentations and omissions regarding product safety. *Cahen*, 147 F. Supp. 3d at 970-71. As with the vehicles in *Cahen*, Plaintiff's economic loss theory here is predicated on an alleged vague

---

webpage allegedly viewed by Plaintiff or are anywhere else for that matter. (*See, e.g.*, Opp. at 1:20-21 ["Defendant tells consumers that its lock boxes provide 'secure' storage for house keys ***and will resist attacks from intruders***."] [emphasis added].)

[3] Defendant's moving brief mistakenly cited paragraph 38 of the FAC for this allegation. The correct citation is paragraph 48 of the FAC.

misrepresentation about how the lock box functions – namely, that Defendant marketed the product as "secure storage" when according to three YouTube videos it is susceptible to decoding at some point in the future. (FAC, ¶¶ 6, 18, 32-33, 36, 38, 40.)  Thus, because Plaintiff's economic theory of loss is based on the vague and generic "secure storage," statement (the alleged misrepresentation purportedly relied on by Plaintiff) that does not plausibly align as a promise to eliminate all vulnerabilities to decoding, as part of how the lock box functions, he cannot merely rely on conclusory allegations of economic loss and must instead allege "something more" beyond a "speculative future risk of harm." *Cahen*, 147 F. Supp. 3d at 970-971; *Cambridge Lane*, 2020 WL 8410437, at *6.

This point was emphasized in a false advertising case—*Boysen v. Walgreen Co.*, No. 11–cv–06262–SI, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012)—cited by the district court in *Cahen*.  *See Cahen*, 147 F. Supp. 3d at 970.  And although cited in Defendant's moving brief, Plaintiff failed to address *Boysen* in his Opposition.  In *Boysen*, the plaintiff asserted UCL and FAL claims based on allegations that defendant's juice labels made affirmative general misrepresentations that the juice products were healthy and safe, while failing to disclose the presence of "material and significant" levels of arsenic and lead in the products.  *Boysen*, 2012 WL 2953069, at *1.  The plaintiff alleged that he and other consumers would not have purchased the juice products had they known the products contained lead and arsenic.  *Id.*  In opposing defendant's motion to dismiss for lack of standing, the plaintiff similarly emphasized that this was a false advertising case and cited to *Degelmann v. Advanced Medical Optics, Inc.*, 659 F.3d 835 (9th Cir. 2011).  *Id.* at *5.  The *Boysen* court rejected the plaintiff's argument and distinguished *Degelmann* because, like Plaintiff here, he had failed to plausibly allege ***facts*** showing that juice products were unfit for their intended use, functioned differently than advertised, or were recalled.  *Id.* at *6-7.  Citing to *Herrington v. Johnson & Johnson Consumer Co., Inc.*, Case No. C 09–1597 CW, 2010 WL 3448531, at *7 (N.D. Cal. Sept. 1, 2010), the court found that plaintiff failed to plead a distinct risk of harm arising from the alleged product defect "that make such an economic injury cognizable."

  Likewise, Plaintiff's Opposition fails to address *Papasan v. Dometic Corp.*, No. 16-CV-02117-HSG, 2017 WL 4865602 (N.D. Cal. Oct. 27, 2017), which also followed *Cahen*. Without limiting its holding to economic or "market effects," *Papasan* held that conclusory allegations of overpayment, like the kind Plaintiff makes here, cannot establish Article III standing; something more specific was required. 2017 WL 4865602, at *6-7. On behalf of a California subclass, plaintiff asserted claims under the UCL, FAL, CLRA and for related breach of warranties based on affirmative misrepresentations of product safety and a failure to disclose the risk of fire or an explosion presented by certain models of defendant's refrigerators. *Id.* at *3. The court dismissed the false advertising claims because plaintiff failed "to articulate any particularized facts showing that she suffered tangible losses—economic, functional or otherwise—from having purchased an allegedly defective Dometic refrigerator." *Id.* at *6. Indeed, because Ms. Papasan, like Plaintiff here, had "at all times used [her product] for the purpose for which it was intended without any apparent problem," she lacked the ability to assert that she did not get the value she paid for or the benefit of the bargain. *Id.*

  Further, *Beyer v. Symantec*, cements this principle in a case alleging that a design defect created security vulnerabilities. In *Beyer*, the plaintiffs asserted UCL, FAL and CLRA claims based on their reliance on defendant's misrepresentations and alleged injury related to purported economic loss from overpayment supposedly caused by security vulnerabilities in defendant's software. *Beyer v. Symantec*, Case No. 18-cv-02006-EMC, 2019 WL 935135, at *2, *4 (N.D. Cal. Feb. 26, 2019). In particular, the plaintiffs pleaded the same overpayment theory of injury as Plaintiff here, alleging that "but for Symantec's material misrepresentations and omissions, which obscured critical limitations in Symantec's software, Plaintiffs would not have purchased a single Norton Product or would have paid substantially less." *Id.* at *3. The court dismissed the plaintiffs' claims for lack of Article III standing because they "rest[ed] on a purported past risk of harm that has never been alleged to manifest and presumably never will, given that the vulnerabilities were patched" and so "[p]laintiffs' 'economic loss theory is

not credible, as the allegation that the [Affected Products] are worth less are conclusory and unsupported by any facts."'" *Id.* at *4 ("Plaintiffs have not "allege[d] that any of their [computers] have actually been hacked, or that they are aware of any [computers] that have been hacked" as a result of the vulnerability.") (quoting *Cahen*, 717 F. App'x at 724).

In this case, Plaintiff premises his overpayment theory on the risk of unauthorized access by a third-party presented by the lock boxes' purported susceptibility to decoding, as seen in the YouTube Videos. (*See* FAC, ¶¶ 51-52 ["Had Plaintiff been aware of the exploit, he would not have purchased the 5422D or would only have been willing to pay substantially less for it."].) But "economic injury that rests on the risk presented by an underlying product defect fails to establish injury in fact if the underlying risk is itself speculative." *Cahen*, 147 F. Supp. 3d at 970. The alleged risk of unauthorized access to a lock box from decoding (like the risk of unauthorized access from hacking in *Cahen*, the risk of security vulnerabilities in *Beyer*, the risk of fire or an explosion in *Papasan* or the safety risk in *Boysen*) fails to establish injury-in-fact for purposes of Article III standing because the risk, as alleged, is at best speculative given that it arises from three YourTube videos, Plaintiff never experienced any third-party decoding of his lock box, and he does not point to any credible real-world examples of other consumers having this experience. (*See generally* FAC.) For this reason, Plaintiff has not plausibly alleged that his lock box was materially different than advertised because Plaintiff does not (and cannot) allege that Defendant represented its lock box products to be not susceptible to decoding or decoding-proof. Instead, Plaintiff's allegations demonstrate that his lock box did provide him (and others) with "secure storage" for his spare house key and otherwise functioned for its intended use.

In contrast, none of the decisions that Plaintiff relies on involve—much less approve of—standing to sue based on vague alleged misrepresentations, the supposed falsity of which turn on the existence of an underlying undisclosed design defect that allegedly presents a vulnerability in the product that creates a risk of future harm.

Instead, in *all* the cases cited by Plaintiff, *unlike this case*, the question of injury turned on the falsity of a specific representation about a particular product characteristic or quality that the product either had or did not have.  For instance, in both *Henriquez v. ALDI Inc.*, No. 222CV06060JLSJEM, 2023 WL 2559200, at *5 (C.D. Cal. Feb. 7, 2023) and *Wright v. Costco Wholesale Corp.*, 2023 WL 210936, at *4 (N.D. Cal. Jan. 17, 2023), the plaintiffs suffered a concrete economic injury by alleging facts showing they were deprived of the benefit of their bargain with the grocery retailer by paying for canned tuna based on label representation that it was "dolphin safe," when in reality the product was not dolphin safe because the fishing methods were hazardous to dolphins.  In *Berke v. Whole Foods Mkt., Inc.*, No. CV 19-7471 PSG (KSX), 2020 WL 5802370 (C.D. Cal. Sept. 18, 2020), the court found a valid benefit of the bargain theory because the plaintiff plausibly alleged that defendant's water beverage product was not sold as advertised because it had "comparatively high arsenic content" despite being labeled as "pure."  *Id.* at *6-7.  *Hinojos v. Kohl's*, 718 F.3d 1098 (9th Cir. 2013), involved allegations that "products at Kohl's department store were falsely advertised as 'on sale'" based on fictious original comparison prices. *Hinojos*, 718 F.3d 1098 at 1102.  In *Chavez v. Blue Sky Nat. Beverage Co.*, 340 F. App'x 359, (9th Cir. 2009) the plaintiff sufficiently alleged injury-in-fact in a false designation of origin case because he purchased the Blue Sky product instead of other brands based on the representation that it was produced in New Mexico when its true place of manufacture was outside New Mexico. *Id.* at 361.  Accordingly, these cases cited by Plaintiff are distinguishable from this case.

      In sum, Plaintiff cannot meet the Article III standing requirements under controlling precedent.  To have standing, Plaintiff must plead actual, concrete facts, not hypotheses, suggesting that the lock box was not worth what he paid for it.  No such facts are alleged here.  Hence Plaintiff lacks Article III standing and the Court should dismiss.

### III. CONCLUSION

      For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's FAC.

| | | |
|---|---|---|
| 1 | DATED: April 28, 2023 | **FOLEY & LARDNER LLP**<br>Jaikaran Singh<br>Kelsey Finn |
| 2 | | |

<br>

*/s/ Jaikaran Singh*
Jaikaran Singh
Attorneys for Defendant Master
Lock Company LLC